■   In the Matter of SAUL A. BABBIN, Petitioner, v STATE TAX COMMISSION, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission. Petitioner, born and raised in New York State, is a long-time employee of the Pennwalt Corporation (Pennwalt), which conducts business operations around the world. Petitioner worked for several foreign divisions of Pennwalt, and later returned to New York where he was employed at Pennwalt's Rochester division. In the latter part of 1972, petitioner was appointed general manager of Pennwalt's European operations, and in December of 1972, he went to Ireland, where he rented a one-room flat. He later lived in a hotel for a short period, and in February of 1973, he rented a house in the Netherlands to serve as his residence and main office. Petitioner sold his New York home in June of 1973, and his wife and children joined him in the Netherlands with all their possessions. During his stay in the Netherlands, petitioner retained his United States citizenship and he did not take any steps to become a citizen of the Netherlands. He had no written

contract with Pennwalt and could be transferred at any time. During 1973, he returned to this country on numerous occasions. After the sale of his New York home, he owned no real property in this country or the Netherlands. On his Federal tax returns, he indicated that his visa was renewable periodically, and also that he had resided in Ireland and the Netherlands. Petitioner remained in the Netherlands until 1976 when he was transferred to Canada. Petitioner filed a New York State nonresident personal income tax return for 1973 which allocated his income as to the days worked within and without the State. The Tax Commission, however, found, after a hearing, that petitioner was domiciled in New York during 1973, that he did not change his domicile to the Netherlands, and, thus, he was taxable on all income wherever earned. Petitioner then commenced this article 78 proceeding seeking to annul that determination. Section 605 (subd [a], par [1]) of the Tax Law defines a resident individual as one "who is domiciled in this state, unless he maintains no permanent place of abode in this state, maintains a permanent place of abode elsewhere, and spends in the aggregate not more than thirty days of the taxable year in this state". Petitioner's basic contention is that he changed his domicile to the Netherlands in 1973. *Matter of Bodfish v Gallman* (50 AD2d 457) is virtually identical to the case at bar and dictates its outcome. In *Bodfish,* the taxpayer, a long-time resident of New York, entered Pakistan in February of 1970 under a four-year multiple entry visa in connection with his employment. During 1970, the taxpayer returned to this country several times. While in Pakistan, he lived at two separate leased residences. His wife and family remained in New York until July of 1970 when they sold their home and joined him. They remained in Pakistan until January of 1973, when the taxpayer was transferred to London, England. On these facts, we held in *Bodfish* that the taxpayer failed to present "clear and convincing evidence showing an intent to change [his] domicile" (p 459). We also noted in *Bodfish* that one who intends to make a domicile in a foreign country "ordinarily would obtain an immigration visa" (p 459) as opposed to a four-year multiple entry visa. In the case before us, petitioner's family continued to live in their Rochester residence until it was sold in June of 1973. Petitioner rented a house in the Netherlands, and entered that country under a restricted visa which was renewable periodically. He returned to this country on numerous occasions. He had no written contract of employment and could have been transferred at any time. He took no steps to become a citizen of the Netherlands. Although none of these factors are themselves controlling, when combined they provided sufficient evidence from which the Tax Commission could rationally conclude that petitioner did not change his domicile to the Netherlands *(Matter of Bodfish v Gallmen, supra,* p 459; see, also, 20 NYCRR 102.2 [d] [2]). In order for a domiciliary of New York to escape taxation under article 22 of the Tax Law, he must satisfy all three of the conditions prescribed in section 605 (subd [a], par [1]) *(Matter of Oatman v State Tax Comm.,* 50 AD2d 1015, app dsmd 429 US 1067; 20 NYCRR 102.2 [a] [b]). We reject petitioner's challenge to the Tax Commission's interpretation of section 605 (subd [a], par [1]) requiring that all three conditions must be met for an *entire taxable year* before a domiciliary of New York may be considered a nonresident. In *Matter of Lane v Gallman* (49 AD2d 963, app dsmd 42 NY2d 823), we found that the interpretation was not "irrational or unreasonable" (p 964). The Tax Commission concluded that petitioner maintained a permanent place of abode in New York for part of the year and did not maintain a permanent place of abode elsewhere for the entire taxable year in question. The record contains substantial evidence to sup-

port that determination. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Greenblott, Sweeney and Main, JJ., concur.

Mikoll, J., dissents and votes to annul in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. Petitioner was born and raised in New York State. He was a long-time employee of the Pennwalt Corporation, a multinational company with operations both within and without the United States. Petitioner worked for Pennwalt for a number of years in South America and then at the Pennwalt division in Rochester. In the latter part of 1972 he accepted an appointment as general manager of Pennwalt's European headquarters with the intent of expanding the company's European business. Pennwalt's existing European facilities were located in Ireland. Petitioner rented a one-room apartment there as his initial base. He searched and determined that the Netherlands would be the best location to establish a firm headquarters in Europe. In mid-February, 1973, he entered into a rental contract for a large house in the Netherlands that would serve both as his home and a firm headquarters. By April 1, 1973, he had taken up residence in the rented home. His European employment was with Pennwalt International and no longer with the division in Rochester. Pennwalt's international operations were managed out of its Philadelphia headquarters. Petitioner testified that in 1972 he and his wife were having matrimonial difficulties and that when he went to Ireland he took all his own personal possessions with him. His wife subsequently agreed to join him in Europe, at the conclusion of the school term, with their three children. A contract to sell the Rochester home, owned jointly by petitioner and his wife, was entered into in March, 1973. Title passed in June. His wife and children joined him in the Netherlands in July. There remained no possessions of the family in New York State after June with the exception of some of the children's bank accounts which were left because of the interest rates. Petitioner and his wife eventually separated. Pennwalt had no written employment contracts with petitioner nor with its other employees. Petitioner had no set time limit on his employment in the Netherlands. His employment was thus indefinite. He hoped to stay in the Netherlands permanently. He registered under Netherland's law as a resident, paid taxes as such resident, purchased an auto, established a bank account there and joined a local organization. Pennwalt did not usually move its employees from division to division. Petitioner's extensive overseas experience with the company was the exception rather than the rule. Petitioner was ruled to be a foreign resident for Federal income tax purposes by the Federal Internal Revenue Service. The State Tax Commission found that petitioner was domiciled in New York throughout 1973 and that he did not acquire a new domicile in the Netherlands. The Tax Commission also determined that petitioner had maintained a permanent place of abode in New York State for part of 1973, and that he had not maintained a permanent place of abode outside the State for the entire year. Petitioner was held subject to personal State income tax under section 605 (subd [a], par [1]) of the Tax Law and 20 NYCRR 102.2. Petitioner contends that he had abandoned his New York State domicile when he went to Europe in 1972 and acquired a foreign domicile in the Netherlands not later than February, 1973. He therefore sought a refund of the $529 withheld by the State in 1973. The tax deficiency assessment can only be upheld upon a finding of New York domicile since the record clearly establishes that petitioner spent less than 183 days in this State in 1973 (Tax Law, § 605, subd [a]). The question for our decision is whether there is substantial evidence in the record as a whole to support the determination of the Tax

Commission that petitioner did not change his domicile to the Netherlands in 1973. The decision of the State Tax Commission must be upheld by this court if there is a rational basis in the record for the findings of fact supporting that determination *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181-182) and the petitioner had the burden of proving the deficiency assessment improper in the evidentiary hearing held before the Tax Commission (Tax Law, § 689, subd [e]). If there are any facts or reasonable inferences from the facts to support the determination of the Tax Commission, the assessment should be confirmed *(Matter of Levin v Gallman,* 42 NY2d 32, 34). Upon review of the entire record I conclude that the determination of the Tax Commission should be modified. To change one's domicile requires an intent to give up the old and take up the new, coupled with an actual acquisition of a new residence in the new locality *(Matter of Newcomb,* 192 NY 238, 250-251; *Matter of Bodfish v Gallman,* 50 AD2d 457-458). The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges the change *(Matter of Newcomb, supra,* p 250; *Matter of Bodfish v Gallman, supra,* p 459). This burden is increased by the strong presumption against acquisition of a foreign domicile *(Matter of Klein v State Tax Comm.,* 55 AD2d 982, 983; *Matter of Bodfish v Gallman, supra,* p 458). Here, there is no dispute that petitioner did, in fact, acquire a foreign residence. The issue is whether he possessed the requisite intent to establish a new domicile and the date of acquisition of the new domicile. Intent is measured by "whether the place of habitation is the permanent home of a person, with the range of sentiment, feeling and permanent association with it" *(Matter of Bodfish v Gallman, supra,* p 458; *Matter of Bourne,* 181 Misc 238, 246, affd 267 App Div 876, affd 293 NY 785). The question of change of domicile is one of fact, not of law and " 'frequently depends on a variety of circumstances, which differ as widely as the peculiarities of individuals' " *(Matter of Brunner,* 41 NY2d 917, 918; *Matter of Newcomb, supra,* p 250). A change of residence for even a short time with the intention in good faith to change the domicile is sufficient *(Matter of Newcomb, supra,* p 250; *Gromel v Gromel,* 22 Misc 2d 33). This is so even though such individual intends to change his home upon the happening of some future event (Restatement [2d ed], Conflict of Laws, § 18). Motives are immaterial, except as they indicate intention. A change may be made for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention. Even if a residence were begun for a temporary purpose, intention may convert it into a domicile *(Matter of Newcomb, supra,* p 251). I conclude that petitioner acquired a foreign domicile in the Netherlands. The acts of the petitioner as of July 1, 1973, when he took up residence with his wife and family in his rented home in the Netherlands, confirm his stated intention to make that residence his domicile. Prior to disposing of his Rochester residence in June, 1973, his acts might be found to be preparatory to the establishment of his new domicile but after that date his acquisition of the new domicile was completed. He then had completely abandoned his New York domicile. He sold his Rochester home, moved his family, terminated all New York affiliations, leased a large home in the Netherlands, purchased a second auto there, enjoyed employment which he reasonably could expect would continue in the future without any fixed time for return to New York or any other location, and he registered and paid taxes in the Netherlands as a permanent resident. The fact that some children's bank accounts remained in New York banks is not significant (see *Matter of Brunner, supra,* p 918).

The foregoing facts distinguish the instant situation from that in *Matter of Klein v State Tax Comm. (supra)*, where Klein and his wife returned to their apartment in New York City to live on November 26, 1969, which they had unsuccessfully attempted to sublet, and remained there until the year's end. Bank accounts were also maintained by Klein in New York and in Switzerland and his contract of employment in Switzerland contained a time limitation. *Matter of Klein*, therefore, does not control the case now before this court. The instant case is also distinguishable on its facts on the question of intent to acquire a new domicile from *Matter of Bodfish v Gallman (supra)*. Here, petitioner had a long history of extensive foreign employment before traveling to the Netherlands for Pennwalt. He originally desired overseas employment as an American with Pennwalt's International Division. He had no contractual limitations on the term of his employment in the Netherlands as did Bodfish. Petitioner paid taxes in the Netherlands as a permanent resident. He stated that he acquired an immigrant status similar to the landed immigrant status he obtained in Canada. He defined a landed immigrant as someone who intends to take up permanent residence in the country. Bodfish did not present such evidence of permanency of residence. On the contrary, Bodfish entered Pakistan on a limited "Four Year Multiple Entry" visa and apparently obtained no immigration visa or its equivalent. Furthermore, in the final analysis, it should be remembered that a person may establish a foreign domicile and yet retain his nationality and citizenship *(Matter of Appleby,* 106 NYS2d 294, affd 279 App Div 993). Thus, evidence of intent to acquire a particular foreign domicile and abandon his New York domicile is much stronger here than was presented in either the *Klein* or *Bodfish* cases. Indeed, we may ask what more can an individual do in order to manifest his intent to change his domicile? I would note that the Legislature had amended section 605 of the Tax Law, which amendment is effective for the tax years subsequent to December 31, 1977 and that under this amendment the petitioner would be exempt (see L 1977, ch 675, §§ 44, 86, subd 5). SCPA 103 (subd 15) defines the term "domicile" as: "A fixed, permanent and principal home to which a person wherever temporarily located always intends to return." The Court of Appeals in *Matter of Brunner (supra,* p 918) stated in reference to SCPA 103 (subd 15) that: "It has been noted that this statute codifies case law under which a domicile is a place where the testator intends to make his home indefinitely (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 103, p 21). This generally is a mixed question of fact and law." Professor Siegel notes in the above-mentioned commentary that the SCPA definition is "a bit strong" in its use of the word "always" and that "Indefiniteness," as opposed to "permanency", is the concept which the law finds most helpful" (p 21). He also notes that "A man's domicile is the place he is making his home indefinitely" (p 21). The professor points up the problem which confronts the court in these cases when he states: "Yet, if the concept really depended on words like 'permanent' and 'always', such thoughts (should they ever be provable) could negate the domicile. Thus the law generally avoids such words" (p 21). By regulation (20 NYCRR [2] [d], [3]), the State Tax Commission declares that a United States citizen will not ordinarily be deemed to have changed his domicile by going to a foreign country unless it is clearly shown that he intends to remain there *permanently*. While it is the duty of the agency responsible for administering a statute to determine the proper construction of its terms, that construction should not be upheld if it is irrational or unreasonable *(Matter of Bernstein v Toia,* 43 NY2d 437; *Matter of Levene v Levitt,* 60 AD2d 787). This

regulation requiring an intent to remain permanently in the new domicile conflicts with the common-law test for change of domicile (Matter of Brunner, supra). That test required the actual acquisition of a residence in another place plus the present intent to establish a new home there (Matter of Newcomb, supra). In effect, the regulation limits establishment of foreign domiciles only to avowed expatriates. Such an interpretation is irrational and unreasonable. Section 654 of the Tax Law provides for the computation of the tax when a resident changes his status to that of nonresident during the tax year. Petitioner did not acquire his new status until he actually took up his new residence with his family in the Netherlands' home and completed the abandonment of his New York domicile in June, 1973. Therefore, petitioner's tax assessment should be recomputed under section 654 using July 1, 1973 as the date of change of residence. The determination of the Tax Commission should be confirmed insofar as it finds petitioner was a domiciliary of New York State from January 1, to June 30, of 1973 and annulled as to its finding of domicile in New York from July 1 to the end of the year; and the matter should be remitted to the Tax Commission for recalculation of the tax deficiency assessment in accord with this opinion.