In the Matter of ROBERT M. SHAPIRO et al., Petitioners, v STATE TAX COMMISSION, Respondent.

Third Department, April 12, 1979

## APPEARANCES OF COUNSEL

*Guggenheimer & Untermyer (Martin A. Roeder* and *Charles Fastenberg* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Diane De Furio Foody* and *Shirley Adelson Siegel* of counsel), for respondent.

**OPINION OF THE COURT**

MIKOLL, J.

The respondent has determined that the petitioners are liable for the taxes on income of $1,020,298 from the sale of securities abroad prior to July, 1971 on the ground that petitioner, Robert M. Shapiro, was a resident of New York State for tax purposes for the entire calendar year of 1971, as defined in section 605 of the New York Tax Law. A tax deficiency of $186,439.20 plus interest since 1971 was assessed.

The petitioner lived in England for 16 years prior to his return in July, 1971 to New York State to assume the presidency of Simplicity Pattern Co., Incorporated. He was elected to the office in April, 1971. Petitioner had left New York State with all his personal possessions in 1955. He requested a transfer from Simplicity Pattern Co., Incorporated following the breakup of his marriage. The company transferred him to England where he assumed the position of managing director of Simplicity Patterns, Ltd., the wholly owned English subsidiary of his New York employer. Commencing in 1956, he worked under a contract which provided for successive annual renewals unless terminated by either party on a month's notice before the end of the year. In 1960, he received a 10-year contract ending in April, 1970 and thereafter was employed without a written contract. While in England he procured a special visa in order to work there, which was renewable annually. In 1959, the English government waived this restriction. He leased a succession of apartments in England on long-term leases. These were furnished by him. At the time of his return to New York in 1971 some five years remained on his last lease. In 1960, he had procured a Mexican divorce from his wife. This divorce was subsequently declared void by a New York court on the ground that the plaintiff was domiciled in England when it was granted. Petitioner did not contest this allegation which constituted the basis for the voiding of the Mexican divorce. His wife subsequently secured a New York divorce. All interest in their New York home was transferred to her. He ultimately married an English citizen with whom he had a son. His son was accepted in an English primary school on petitioner's assurance that he was in England permanently and it was his intention that his son complete the school. In 1968 he purchased a home in Folkestone, England, in his wife's name. It was intended to be his retirement home. Meanwhile, his father-in-law lived there. Pe-

titioner did not vote in the United States since his departure. He paid income taxes in England. During his long absence abroad he made only infrequent business trips to New York and attended two family funerals. He at all times represented that England was his home.

■ ■ Petitioner contends that his conduct during his long stay abroad is totally consistent with his declarations of intent to acquire an English domicile and that he has conclusively established a change of domicile from New York State to England. We agree. A change of domicile requires an intent to give up the old and take up the new, coupled with an actual acquisition of a residence in the new locality (*Matter of Newcomb*, 192 NY 238). The test of intent with respect to a domicile has been stated as "whether the place of habitation is the permanent home of a person, with the range of sentiment, feeling and permanent association with it." (*Matter of Bourne*, 181 Misc 238, 246, affd 267 App Div 876, affd 293 NY 785.) It is established that if there are any facts or reasonable inferences from the record to support the determination of the Tax Commission, the assessment should be confirmed (*Matter of Levin v Gallman*, 42 NY2d 32). Respondent points to petitioner's purchase of a property in New York State in 1968, his failure to acquire an immigration visa, his registering his son with the American Embassy, his close ties to Simplicity Pattern Co., Incorporated and his maintenance of bank accounts in New York State as indicative of a continued intention to remain a New York State domiciliary. Although such facts might justify the determination of the Tax Commission in some instances, when taken in the context of all the other facts in this case, and particularly petitioner's continuous long stay abroad, we conclude that the determination here should be annulled.

The determination should be annulled, without costs, the petition granted and the matter remitted for further proceedings not inconsistent herewith.

HERLIHY, J. (dissenting). The petitioner, Robert M. Shapiro, was admittedly a domiciliary of New York State in 1955. At that time he moved to England and he acquired a visa from the English government which until 1959 required a yearly renewal. He also during the entire period renewed his United States passport. He alleged that he did not thereafter own or maintain a residence in New York until 1971. Throughout

those years he continuously maintained residences in England.

The petitioner was continually employed by a parent New York corporation and its English subsidiary. The New York corporation had been founded by the petitioner's brother and father and the petitioner was a vice-president and director of the New York corporation throughout the years he was in England. As of March 8, 1971, he was the second largest shareholder of the New York corporation and on May 27, 1971 he sold a substantial number of shares in a transaction consummated outside of New York State. That sale resulted in a large capital gain and based upon his admitted resumption of residence in New York State on July 24 or 27 of 1971, the petitioner has been assessed income taxes on that capital gain.

Upon the present record there was evidence which would have supported a finding that the petitioner was a resident (domiciliary) of New York State at all times on and after his acceptance of the presidency of the New York corporation as of April 30, 1971. At that time he owned a residence in New York State (which he chose to characterize as a "holiday home"), and he was present in New York and fully intended to become a permanent resident as was required by his employment. Based upon that evidence the finding that the sale of his stock occurred while he was a New York resident is beyond attack by judicial review (Tax Law, § 605, subd [a], par [1]). However, the respondent has not relied upon the evidence showing residence as of the time the stock was sold. Instead it found that the petitioner has not established that he ever gave up the New York domicile which he had in 1955, and since he both maintained a permanent abode in New York State and spent at least 30 days here in 1971, the income was taxable *(id.)*.

It is well established that if there are any facts or reasonable inferences from the record evidence to support the determination of the Tax Commission, the assessment should be confirmed *(Matter of Levin v Gallman,* 42 NY2d 32, 34). There is a strong presumption *against* the acquisition of a foreign domicile *(Matter of Klein v State Tax Comm.,* 43 NY2d 812, affg on opn below 55 AD2d 982; *Matter of Newcomb,* 192 NY 238, 250).

In the present case, the record demonstrates that while the petitioner intended to separate himself from the scene of domestic problems and for that purpose went to England,

there is nothing to indicate an intent to be a domiciliary of England when he left New York. Aside from his assertion that he had come to regard England as his permanent home prior to 1971, the only evidence to support such an inference is his long-term residence there. Prior to 1968 he did not own any property in England, although in 1968 he purchased a home in Kent, but he has never resided therein, and the property was put in his English wife's name and its sole tenant was her father.

On the other hand, the petitioner remained an employee and substantial shareholder of the New York employer throughout his English residency, he had substantial personal financial contacts with New York, he purchased a residence in New York State in 1968 and it was furnished by his brother for petitioner's benefit upon his return. The only evidence in this record is that if he became president of the New York State employer he would have to return to New York. The position of petitioner as the younger brother of the president of the New York employer and as a substantial shareholder and vice-president of the employer reasonably implies an expectation of becoming president as he in fact did. Petitioners rely upon *Matter of Brunner* (51 AD2d 995, affd 41 NY2d 917) but that was a different factual pattern and is not controlling.

The petitioner has failed to present "clear and convincing evidence showing an intent to change [his] domicile" *(Matter of Bodfish v Gallman,* 50 AD2d 457, 459. See, also, *Matter of Babbin v State Tax Comm.,* 67 AD2d 762.)* Accordingly, the determination of the respondent is not irrational and is supported by substantial evidence.

Inasmuch as there is a reasonable basis for a finding either for or against the petitioner and the respondent has found against the petitioner, it cannot be said as a matter of law that the determination is arbitrary and capricious. The test adopted by the Court of Appeals requires only a reasonable basis for the respondent's determination *(Matter of Levin v Gallman, supra).*

The determination should be confirmed.

GREENBLOTT, J. P., and MAIN, J., concur with MIKOLL, J.; KANE and HERLIHY, JJ., dissent and vote to confirm in an opinion by HERLIHY, J.

Determination annulled, without costs; petition granted and

matter remitted for further proceedings not inconsistent here-with.