■ DOUGLAS A. WILKE, Respondent, v ALICE D. WILKE, Appellant.—In an action in which the plaintiff husband was granted a separation, defendant wife appeals from an order of the Supreme Court, Nassau County, dated September 11, 1978, which denied her motion to modify the judgment of separation by striking the second decretal paragraph thereof which awarded custody of the parties' minor child to the plaintiff. Order reversed, on the law and the facts, and defendant's motion is granted, with $50 costs and disbursements. On May 16, 1977 a judgment was entered granting the plaintiff a separation on the ground of abandonment and giving him custody of the parties' minor child. The judgment was entered following a hearing on the undefended calendar, the defendant having been served only by certified mail and not having answered the complaint. On January 20, 1977,

prior to the certified mail service, defendant had left the marital home, taking the child and her possessions to Kansas, where she resided for approximately 15 months before leaving for California, her present domicile. While in Kansas, she instituted a divorce proceeding against her husband, which resulted in a decree of divorce and a custody determination in her favor. That decree was granted on November 15, 1977, some six months after the New York judgment awarding custody to the plaintiff was entered. Defendant then brought the instant motion to strike the decretal paragraph of the New York judgment giving plaintiff custody of the child, on the ground that service by certified mail alone was insufficient to confer jurisdiction on someone who was no longer a domiciliary of the State of New York. Plaintiff countered by raising two arguments, to wit: (1) during the time that defendant was in Kansas she had remained a domiciliary of New York, never having had the requisite intent to make Kansas her new domicile, and (2) that article 5-A of the Domestic Relations Law, otherwise known as the Uniform Child Custody Jurisdiction Act, should be applied retroactively to the facts at bar, thus giving the New York Supreme Court jurisdiction under section 75-d of the new act. Under the facts as presented, we cannot agree that the defendant retained her New York domicile, nor can we concur with the plaintiff's second argument. Accordingly, we reverse. Plaintiff's first point, that defendant maintained her New York domicile during the time she resided in Kansas, so that the certified mail service upon her was sufficient to confer jurisdiction, is belied by the facts. The issue of domicile is necessarily a question of fact. (See *Matter of Ruiz v Lavine,* 49 AD2d 1; *Ruderman v Ruderman,* 193 Misc 85, affd 275 App Div 834.) Therefore, we must consider the jurisdictional facts of the present case and weigh them against the balancing considerations in order to determine the domicile of the defendant. In her affidavit, the defendant stated that she had been domiciled in Kansas from January 25, 1977 through May 15, 1978, when she moved to California. She stated that she left New York with no intention of ever returning on a permanent basis and with the intention of making Kansas her permanent home. Her primary reason for going to Kansas was a valuable employment opportunity which was not available in the New York area. Likewise, her subsequent move to California was for the purpose of advancing her career. While in Kansas she leased an apartment, voted in a Kansas election and registered her vehicle there. Lastly, she noted that her child enrolled in and attended school in Kansas. Plaintiff, on the other hand, claimed that the defendant's only reason for moving to Kansas was to obtain a favorable divorce and custody arrangement. In support of this he noted that in 1975 the defendant left home for Oregon, hoping to find similar relief. However, she returned to New York after that excursion. Plaintiff bolstered his argument that defendant only went to Kansas for the purpose of securing a divorce with the claim that she committed a fraud on the Kansas court when she stated in her petition for divorce dated February 17, 1977 that she had been a resident of Kansas in excess of 60 days. (The petition was later amended to conform with the proof.) Lastly, it should be noted that the defendant did leave Kansas for California within three months of securing her divorce from the plaintiff. The burden of proving a change in domicile is on the party asserting the change—here, the defendant. (See *Ruderman v Ruderman,* 193 Misc 85, affd 275 App Div 834, *supra.)* The standard of proof in such cases is that the evidence establishing such a change must be clear and convincing *(Ruderman v Ruderman, supra,* p 87). Looking at the evidence as a whole, however, we must conclude that the defendant did sustain her burden in

this case. While so-called "formal declarations" of domicile such as voter registration or motor vehicle registration have lost their importance in recent years as courts have recognized their self-serving nature, the "informal declarations" and acts of the person have been given greater recognition in resolving the question of domicile. (See Restatement, Conflicts 2d, § 20, "Special Note on Evidence for Establishment of a Domicil of Choice", pp 81-83; *Matter of Bourne,* 181 Misc 238, affd 267 App Div 867, affd 293 NY 785.) Among these "informal acts" include the fact that defendant took a job and entered into a renewable contract of employment, signed a lease for an apartment, and made statements to the effect that she had no intention of returning to New York. With such a showing, defendant has sustained her burden of proof. We therefore conclude that the service by mail upon the defendant was void as she was no longer a domiciliary of the State of New York at the time of service. In his second point on this appeal, plaintiff argues that article 5-A of the Domestic Relations Law, the Uniform Child Custody Jurisdiction Act (the Act), should be applied retroactively so as to enable the New York courts to take jurisdiction over the person of the defendant. Such retroactive application would be necessary as the events in this case occurred in early 1977, at a time not only before the Act became effective, but also before the legislation had been passed into law. The precise question of retroactive application of the jurisdictional components of the Act is one of first impression for the appellate courts of this State. However, a clear analogy may be drawn to the circumstances surrounding the passage and effect of CPLR 302, the "long-arm" jurisdiction statute. Like the Act, the long-arm statute also extended New York's reach of personal jurisdiction into areas where it had not heretofore been exercised. Soon after the enactment of CPLR 302, the Court of Appeals was faced with the question of retroactivity in the case of *Simonson v International Bank* (14 NY2d 281). The court, per Judge Fuld, stated (p 284): "The primary question presented by this appeal is whether the provisions of the new CPLR (302), effective September 1, 1963, and the principles embodied therein, enlarging the bases for acquiring personal jurisdiction over foreign corporations and nonresident persons, have retroactive application to previously instituted actions." With respect to the question of retroactivity, the court noted that it is presumed that (p 289) " 'Changes in the form of remedies', effected by a statute such as this, [are] 'applicable to proceedings thereafter instituted for the redress of wrongs already done.' " However, the court went on, stating that (p 289): "different considerations are involved and a 'different problem arises' * * * 'when proceedings are already pending. There is then a distinction to be noted. The [procedural] change is applicable even then if directed to the litigation in future steps and stages * * *. It is inapplicable, unless in exceptional conditions, where the effect is to reach backward, and nullify by relation the things already done'." The court continued (p 289): "In other words, while procedural changes are, in the absence of words of exclusion, deemed applicable to *'subsequent proceedings in pending actions'* * * * it takes 'a clear expression of the legislative purpose to justify' a retrospective application of even a procedural statute so as to affect proceedings *previously taken* in such actions." The court thus concluded (p 290): "it is manifest, despite some lower court cases to the contrary * * * that the new section does not apply to actions instituted prior to its effective date and does not operate, by relation back, to validate an attempted service of process which was jurisdictionally defective when made". Based on this clear statement of policy proscribing the application of a new jurisdictional act to confer jurisdiction *nunc pro tunc,* we hold that the Uniform Child

Custody Jurisdiction Act may not be applied in this fashion. Moreover, as no valid in personam jurisdiction was conferred by the aforesaid service by certified mail, the order of Special Term must be reversed and the defendant's motion granted. Lazer, J. P., Gulotta, Cohalan and Martuscello, JJ., concur.