■ In the Matter of HAROLD A. MERCER et al., Petitioners, v STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a personal income tax assessment imposed pursuant to article 22 of the Tax Law for the years 1970 and 1973. The State Tax Commission (commission) determined that petitioners were residents of New York State for income tax purposes during the entire years of 1970 and 1973. It found that they were domiciled in New York throughout 1970 and 1973, and that they did not satisfy the requirements of section 605 (subd [a], par [1]) of the Tax Law or 20 NYCRR 102.2 (b) for either year. Petitioners contend that they abandoned their New York domicile prior to 1970 when they moved to England and that they did not regain it until March, 1973. Since 1952, Mr. Mercer, who was born and educated in the Buffalo area, had been employed by Airco Alloys, Inc., which had its divisional headquarters in Niagara Falls. In 1969, a dramatic increase in international business prompted the employer to establish a separate department in London to administer its international affairs. As the company's senior vice-president in this field, Mr. Mercer was placed in charge of that office; his new assignment was the sole reason petitioners moved to England. In the fall of 1969, petitioners located and purchased a home in England. Thereafter, on December 1, 1969, they executed a binding contract to sell their home in Lewiston, New York, where they had resided for the past 16 years. On January 6, 1970, Mr. Mercer left for England, returning to New York on January 20, 1970 to complete the steps necessary for his departure and to pick up his wife and daughter and return to England. The Mercers lived in a hotel in Niagara Falls on January 28 and 29 and on January 30, 1970, they finally left for England. While abroad, in 1972, Mr. Mercer suffered a stroke which left him physically incapable of continuing to work at the same strenuous pace. He was reassigned to the Niagara Falls office, and in March, 1973, Mr. Mercer again took up residence in Lewiston. The commission concluded that while petitioners may very well have departed without intending to return, they failed to carry their burden of clearly and convincingly demonstrating an intent to stay in England permanently (20 NYCRR 102.2 [d] [3]). Among the factors militating in favor of the commission's determination that petitioners' residence in England was only for a limited time are Mr. Mercer's declarations that it was his purpose to remain there only until he retired, which he ultimately proposed to do in Florida; it was there that his parents resided and where his brothers expected to eventually relocate. With this goal in mind, even while still in England, he was working with Florida real estate agents to locate a retirement home. Had he been financially able to do so when he suffered his unfortunate illness, he admittedly would have returned to Florida then. It is not without significance that Mr. Mercer acquired only a working visa, renewable annually, from the

English government. An effort to attain English citizenship was not made nor was an immigration visa sought (see *Matter of Cooper v State Tax Comm.*, 82 AD2d 950; *Matter of Babbin v State Tax Comm.*, 67 AD2d 762, affd 49 NY2d 846), and he retained his United States passport. Moreover, while abroad, petitioners continued to file United States income tax returns. That his employment in England was not necessarily to be of extended duration, but subject to change, is further inferable from his being employed pursuant to a year-to-year contract. His apparent willingness to accept transfers in accordance with the wishes of his employer is underscored by the Mercers' return to New York following his disablement. And the fact that petitioners sold their New York residence and moved elsewhere is simply not dispositive of a change in domicile (see *Matter of Chrisman*, 43 AD2d 771). Since this record furnishes a reasonable basis for a finding either for or against petitioners, we are unable to say, as a matter of law, that respondent's determination was arbitrary, capricious or unsupported by substantial evidence (see *Matter of Schulman v Tully*, 86 AD2d 705), particularly when it is borne in mind that there is a strong presumption against the acquisition of a foreign domicile (see *Matter of Reeves v State Tax Comm.*, 52 NY2d 959, revg on dissenting opn below 74 AD2d 934, 936). A new domicile not having been acquired, petitioners, for the years involved, continued to be domiciliaries of New York State. Domiciliaries like petitioners can still qualify for nonresident tax treatment if they satisfy the conditions enumerated in section 605 (subd [a], par [1]) of the Tax Law. However, because the Mercers failed to maintain a permanent place of abode in England for the entire taxable year of 1970, the commission correctly found them not entitled to such treatment (20 NYCRR 102.2 [b] [1]). Determination confirmed, and petition dismissed, without costs. Main, Yesawich, Jr., and Levine, JJ., concur.

Mahoney, P. J., and Mikoll, J., dissent and vote to annul in the following memorandum by Mikoll, J. Mikoll, J. (dissenting). We respectfully dissent. The instant record prompts the question, "To what lengths must a taxpayer go in order to effectuate a change in domicile?" The Tax Commission's decision focuses not on the whole picture, but on a few facts which, when assessed against the whole, are insignificant and do not support its determination by substantial evidence. The majority attributes significance to the fact that Mr. Mercer's new job opportunity abroad was the sole reason which prompted the family's move to England. Rather than finding the reason for the move to be unique, we find it to be the most common and pragmatic of reasons why people change their domicile. It should be noted that the commission concluded that "petitioners departed without ever intending to return". This finding is contradicted by its subsequent conclusion that "the Mercers did not intend to stay permanently in England". Ruminations on a speculative, possible future retirement to the Sun Belt, which so often figure in people's dreams, are hardly a basis on which to conclude that a domicile was not established in England. The future is never carved unchangingly in stone. When the Mercers left New York, *without intending ever to return,* they had, of necessity, to alight somewhere. Their move to England was not for pleasure, nor were they part of the jet set which buzzes from one spot to another. Home was where their hearth was and that could be nowhere else but in the expensive, lovely home they had purchased in Weybridge, England, and which they remodeled extensively to suit their long-term plans. The Mercers had unequivocally broken all ties with New York. They sold their New York home, left aged parents behind, and dramatically uprooted themselves and their children. They sent their young son, Marcus, on ahead to England to live with a tutor so as to prepare him for a successful adjustment to a European-type school. Their daughter, at

considerable financial loss, surrendered her New York State Regents' college scholarship and registered in a European school. They put their pet dog and themselves through the agony of its nine-month quarantine. They severed all legal, business, social and civic contacts with New York State. This was all done with an obvious intention to relocate permanently in England. There is absolutely no reason to conclude that New York remained their domicile after their wholesale move to England simply because they thought of a *possible* retirement in Florida. Such speculative plans did not alter the demonstrated intent to make England their permanent home. "Permanent" is not to be equated with "never to be changed under any circumstances". The fact that Mr. Mercer did not choose to give up his American citizenship or seek an immigration visa should not be determinative on the question of domicile in view of the other crucial factors which bear out his intentions so clearly. *Matter of Babbin v State Tax Comm.* (67 AD2d 762, affd 49 NY2d 846) can be distinguished on its facts. Mr. Mercer's employer's testimony that Mr. Mercer was chosen for this assignment because, in the opinion of top management, "he was willing to end his working days in England" and "would not, a year later holler to come back" is supportive also of a change of domicile. His subsequent return to New York because of a debilitating stroke which made it physically impossible for him to carry on the challenging assignment in England is hardly indicative of a "willingness to accept transfers in accordance with the wishes of his employer", as concluded by the majority. His return to New York was dictated by reasons of health and financial necessity. His employer offered him a·less demanding job in New York and, since he was still a relatively young man and not financially independent, reality dictated the return to New York. The petition should be granted and the determination of the commission annulled.