■ In the Matter of WARREN W. CLUTE, JR., et al., Petitioners, v RODERICK G. W. CHU et al., Constituting the Tax Commission of the State of New York, Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a personal income tax assessment imposed pursuant to article 22 of the Tax Law.

Petitioner was a lifelong resident of the Watkins Glen area of Schuyler County. In 1976, he negotiated for the sale of the family business, located in the same locality, which consisted of mining and marketing salt. This sale was concluded on December 28, 1976. He contends that he made a decision on October 14, 1976 to change his domicile from the State of New York to the State of Florida. Thereafter, he filed a resident income tax return in New York State for the income he had until October 14, 1976 and a nonresident return for the balance of the year. For the year 1977, he filed a nonresident return. The Department of Taxation and Finance determined that petitioner was a New York State resident throughout the years 1976 and 1977 and, consequently, subject to New York State personal income tax as a resident. The decision was upheld by the State Tax Commission after an administrative hearing and this CPLR article 78 proceeding seeking to challenge that determination ensued.

In 1976, petitioner was 64 years of age. He lived in a home which he owned in the Village of Watkins Glen known as "Rose Hill Farm". He also owned two pieces of property on nearby Seneca Lake, one having a day cottage on it and the other a boat house. As trustee of his father's estate, petitioner was the owner of a residence known as "Idlewild" in Watkins Glen which he had been trying to sell since 1973. He married his present wife in January, 1976 who, at the time of their marriage, resided in Naples, Florida, and continued to reside there during the tax years in issue. The Tax Commission found that she could not be considered a resident or domiciliary of the State of New York.

Petitioner worked for the Watkins Salt Company since 1933 and was elected president in 1938 and chairman of the board of

directors thereafter. He and his two sisters owned 90% of the company. Petitioner was also chairman of the board and a director of the Glen National Bank and Trust Company of Watkins Glen, and following its merger with Security Trust Company of Rochester, New York, a director of Security Trust.

During the years 1973 and 1974, petitioner concluded that because of the fact that his children had no desire to involve themselves in the salt company, he would offer it for sale. As previously stated, serious negotiations began to take place in 1976 which culminated in the completion of the sale on December 28, 1976. According to petitioner's testimony, he decided to change his residence to the State of Florida at the time that he determined that the salt company should be sold. In January, 1974, he purchased and moved into a condominium in Naples, Florida. Upon his marriage to his present wife, she joined him in the condominium which was furnished partly with personal property which petitioner brought from his New York State residence and personal property which belonged to his wife in Florida. In April, 1977, petitioner and his wife bought a second condominium in Naples, Florida, and ultimately sold the prior property. Petitioner had resigned from the Fifth Avenue Club and the Cornell Club in New York City in 1974, and the Statler Club in the City of Ithaca and the M & M Club in Montour Falls in 1976. He joined the Wilderness Country Club in Naples, Florida, in 1976, the Naples Sailing and Yachting Club in 1977, and the Port Royal Club in Florida in 1977. He continued to own Rose Hill Farm in Watkins Glen throughout the years 1976 and 1977 and occupied it whenever his business activities required him to be in the Watkins Glen area. However, his son and his son's wife lived there during those years. He maintained his listing in the Watkins Glen telephone directory and paid the taxes and utility bills on Rose Hill Farm. He disposed of his boat in New York State during that period of time. He did not vote in the year 1976.

Following the sale of the business on December 28, 1976, petitioner retained his directorship in the Glen National Bank in Watkins Glen and attended meetings monthly. He also retained his directorship in Security Trust in Rochester, New York, which had quarterly meetings. He had continuing responsibilities as trustee of his father's estate and for the disposition of Rose Hill Farm to his children which was not accomplished until after 1977. On December 8, 1976, petitioner filed a declaration of domicile and citizenship in Florida stating that he had changed his domicile from the State of New York to the State of Florida on October 14, 1976. At the first opportunity thereafter

he registered to vote in Florida and filled out a juror questionnaire. On December 8, 1976, he executed a codicil to his will reciting that he had changed his residence to Florida. Both he and his wife registered their motor vehicles in Florida. He discontinued his safe deposit box in New York State on December 9, 1976 and opened one in Florida on February 1, 1977. He also opened checking and savings accounts in Florida, paid a 1977 Florida intangible tax and affiliated with the church in Florida of which his wife was a member.

Relying principally upon two factors, the Tax Commission made its determination that petitioner continued to be a domiciliary of the State of New York throughout the taxable year 1977. First, the Tax Commission found that there had not been an abandonment of petitioner's Watkins Glen home; he used that more frequently during the two years in question than he did his Florida residence. Second, he spent a very considerable portion of his time in fulfilling his responsibility as a director in each of the two banks located in New York State. The determination of an individual's domicile is ordinarily based on conduct manifesting an intent to establish a permanent home with permanent associations in a given location (*Matter of Minsky v Tully,* 78 AD2d 955). An individual's original or selected domicile continues until there is a clear manifestation of an intent to acquire a new one (*Matter of Bodfish v Gallman,* 50 AD2d 457). From the record, it would appear to us that there was substantial evidence which supported both the position of petitioner and that of the Tax Commission. However, in a CPLR article 78 review of a Tax Commission determination, as with judicial review of administrative determinations generally, we are not at liberty to substitute our judgment for an agency's reasonable determination supported by substantial proof in the record merely because one could reasonably reach a different conclusion on the basis of the evidence presented (*300 Gramtan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180; *Matter of Mercer v State Tax Comm.,* 92 AD2d 636, 637). We are thus unable to say that the Tax Commission acted irrationally or upon less than substantial evidence in determining that petitioner had failed in meeting his burden of proving a change in domicile during the tax years in question (see *Matter of Thibault v State Tax Comm.,* 50 AD2d 1045, 1046).

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Main, Mikoll Yesawich, Jr., and Harvey, JJ., concur.