■ In the Matter of FRANCIS L. MCKONE et al., Petitioners, v STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent. — Harvey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County), to review a determination of respondent which sustained a personal income tax assessment against petitioners.

The only issue in this controversy is whether petitioners were domiciliaries of New York during the entire year of 1976. They contend that they were nondomiciliaries until they actually moved here from Canada on August 13, 1976. If their contention is accepted, there is no basis for an assessment of a deficiency of

personal income tax. Respondent determined that petitioners became domiciled in New York in 1967 and remained domiciled in New York continuously through the year 1976, even though they had actually moved to Canada in 1973. If there is substantial evidence supporting respondent's contention, the notice of tax deficiency is warranted.

The facts are not disputed. In 1967, petitioner Francis L. McKone (hereinafter petitioner) was employed in New York by Albany International Corporation (AIC) as an executive in that organization's headquarters in the City of Albany. His assignment was changed in 1973 to that of general manager of Albany Felt of Canada, a subsidiary of AIC located in Collinsville, Quebec. Upon being notified of the change of assignment, petitioners sold their home in Albany, closed out their bank accounts, severed all relationship with their former residence and moved with their family and all their possessions to Collinsville. In Collinsville, they purchased a new home, opened new bank accounts, enrolled their children in local schools, obtained Quebec driver's licenses, registered their motor vehicles in Quebec and paid Canadian income taxes for the years 1973 through 1976. Petitioners entered Canada on a permanent resident visa and thereby became landed immigrants. They terminated their membership in New York organizations and took out membership in Canadian Manufacturers Association and Canadian Paper and Pulp Association. Neither petitioner nor his wife was born or raised in New York and neither had any relatives or friends of long standing living in New York. Petitioner's wife was born in Canada and had relatives living in Canada. Although during their Albany residence they had registered and voted in New York, petitioners did not vote in the United States after their move to Canada.

Respondent found as fact that the employment of petitioner with Albany Felt of Canada was "of a permanent nature and of indefinite duration". It is significant that respondent also recognized the fact that, although the usual foreign assignment of an employee of AIC was of a fixed temporary period, petitioner's assignment to the position in Quebec was indefinite.

It appears to us that the primary basis for respondent's decision was its reliance upon a statement made by petitioner during his testimony to the effect that he would move to any location to avail himself of any assignment offered by his company that he deemed suitable. Respondent concluded that, because of petitioner's willingness to move to whatever locality as might be required by his company, he never had an intention to live in Quebec permanently. It is incongruous that respondent

accepted that standard as applicable to the move to Quebec and rejected it in its determination that petitioners became domiciliaries of New York upon their earlier move from Massachusetts under precisely the same circumstances.

The Tax Law does not define domicile, although it uses the word "domiciled" in section 605. Relying upon its interpretation of the common-law concept of domicile, respondent has promulgated a regulation in which it states that "[d]omicile, in general, is the place which an individual intends to be his permanent home — the place to which he intends to return whenever he may be absent" (20 NYCRR 102.2 [d] [1]). The definition is patterned from the language of the opinion in *Matter of Newcomb* (192 NY 238), cited in respondent's decision.

Domicile is established by physical presence and intent (*Matter of Minsky v Tully,* 78 AD2d 955; *Matter of Bodfish v Gallman,* 50 AD2d 457). Because the interests of others is often involved in a determination of domicile, we often disregard the stated intent of the parties, look to their acts and apply basic legal principles to those acts (*Wilke v Wilke,* 73 AD2d 915, 916-917; *see,* 17 NY Jur, Domicil and Residence, §§ 54-59, at 56-66 [1961]). In this respect, the courts have used the word "permanent" to distinguish the duration of a contemplated residence from "temporary". It is obvious that the use of the word "permanent" has caused considerable confusion. To avoid further confusion, we quote at length from scholarly treatises on the nature of the intent necessary to establish domicile.

"The intention necessary for acquisition of a domicil may not be an intention of living in the locality as a matter of temporary expediency. It must be an intention to live permanently or indefinitely in that place. But it need not be an intention to remain for all time; it is sufficient if the intention is to remain for an indefinite period." (25 Am Jur 2d, Domicil, § 25, at 19 [1966].)

"When a person has actually removed to another place, which is his fixed present residence, with an intention of remaining there for an indefinite time, it becomes his place of domicile, notwithstanding he may have a floating intention to return to his former domicile at some future and indefinite time." (28 CJS, Domicile, § 11, at 19 [1941].)

"Though the idea of permanency is sometimes involved in the domicile concept, the term 'domicile' is more safely defined in the negative rather than affirmative. A person's domicile is the place he is making his home not 'with' a present intention to remain there forever, but 'without' a present intention of leaving at some particular future time." (Siegel, Practice Commentary, McKinney's Cons Laws of NY, Book 58A, SCPA 103, p 21.)

The Practice Commentary was cited and relied upon by the Court of Appeals in *Matter of Brunner* (41 NY2d 917, 918).

In applying the above concepts to the facts of the case before us, it is obvious that we must annul respondent's determination. In order to establish residence in Quebec, it was not necessary that petitioners prove that they had the intention of remaining there for the rest of their lives. There was no proof that when petitioners took up residence in Quebec, they had any existing intention to leave Quebec and to take up residence at some other definite location at a particular time. It is significant that only a small percentage of the executives of AIC were assigned to its Albany headquarters. There was no existing plan or program established for petitioner's subsequent transfer. Petitioner came back to New York in 1976 to assume a position which had only recently been created and which did not exist at the time petitioners moved to Canada. In 1973, petitioner was in a situation comparable to that of innumerable corporate executives. He moved up the ladder but without any certainty that further advancement would take place. In the event of a promotion, he had no knowledge of when and where his next assignment would require him to move.

Respondent's decision, under the heading of "conclusions of law", makes reference to a general presumption against a foreign domicile as stronger than the general presumption against a change of domicile (*see, Matter of Klein v State Tax Commn.*, 55 AD2d 982, 983, *affd* 43 NY2d 812; *Matter of Bodfish v Gallman*, 50 AD2d 457, *supra*). We find both cases distinguishable from the instant case. *Klein's* foreign connections were of a very temporary nature and the court in *Bodfish* was influenced by the fact that the taxpayer had only obtained a temporary visa. In the instant case, petitioners obtained a permanent visa, they purchased a home and there was nothing about their conduct which indicated that their stay in Canada was of a temporary nature. In *Matter of Mercer v State Tax Commn.* (92 AD2d 636) and *Matter of Minsky v Tully* (78 AD2d 955, *supra*), the ties with the departed location either remained or the ties with the new location were by their nature temporary. Supportive of petitioners' position is *Matter of Bernbach v State Tax Commn.* (98 AD2d 559, 563), in which the court stated: "In short, the courts have often deferred to the Tax Commission's broad fact-finding powers in determining whether a taxpayer has changed his domicile, but that power is not without its limits. In our view, the limit has been exceeded here, for the grounds invoked by the Tax Commission to support its conclusion do not provide the necessary rational basis."

We conclude, therefore, that there was no rational basis in the evidence before respondent for a determination that petitioners were domiciled in New York during the year 1976 until August 13, 1976.

Determination annulled, with costs, and matter remitted to respondent for further proceedings not inconsistent herewith. Main, J. P., Mikoll and Harvey, JJ., concur; Weiss and Yesawich, Jr., JJ., dissent and vote to confirm in the following memorandum by Weiss, J.

Weiss, J. (dissenting). We respectfully dissent and would confirm respondent's determination.

Tax Law § 605 (a) (1) defines a resident as an individual who is domiciled in this State unless he maintains no permanent place of abode in this State, maintains a permanent place of abode elsewhere and spends, in the aggregate, not more than 30 days of the taxable year in this State. Sections 611 and 612 provide that income of a resident shall be taxable by this State. Further, an individual may be a resident of this State for tax purposes, even though he would not be a resident for other purposes, so long as he is domiciled in this State (20 NYCRR 102.2 [d] [1]). This regulation defines domicile as "the place which an individual intends to be his permanent home — the place to which he intends to return whenever he may be absent" (20 NYCRR 102.2 [d] [1]). Respondent concluded that petitioners' relocation from New York to Canada, then to Wisconsin and ultimately back to New York were the sole results of assignments by the employer of petitioner Francis L. McKone (hereinafter petitioner) and within the realm of his duties as a corporate officer. Respondent further held that petitioners "failed to clearly show that their move to Canada was of such a permanent nature as to effect a change of domicile".

If the facts and the reasonable inferences to be drawn therefrom provide a rational basis for respondent's conclusions, the determination cannot be disturbed (see, Matter of Liberman v Gallman, 41 NY2d 774). Certain pertinent principles of law relevant to this proceeding are well settled. "To create a change of domicil, both the intention to make the new location a fixed and permanent home and actual residence at such location, animus et factus, must be present; residence without intention, or intention without residence, is of no avail" (17 NY Jur, Domicil and Residence, § 12 [1961]; see, Matter of Newcomb, 192 NY 238). "The evidence to establish the required intention to effect a change in domicile must be clear and convincing * * * The presumption against a foreign domicile is stronger than the general presumption against a change of domicile" (Matter of

*Bodfish v Gallman,* 50 AD2d 457, 458; *accord, Matter of Klein v State Tax Commn.,* 55 AD2d 982, 983, *affd* 43 NY2d 812). If a party has overcome these heavy burdens, however, any period of residence, however short, when coupled with the requisite intent is sufficient to establish a new domicile (*Dupuy v Wurtz,* 53 NY 556).

These principles in mind, examination of the record confirms that the move to Canada by petitioner and his wife was of indefinite duration dependent solely upon the orders from petitioner's employer. While petitioner testified on direct examination that when he moved to Canada he had no intention of returning to New York, he testified on cross-examination that as a career employee he was prepared to accept transfer or assignment to any location designated by his employer for whatever duration of time specified. He further stated that officers were frequently required to change job locations, that the duration of time at any location was indefinite and that he had no written contract of employment.

The evidence to establish a change of domicile must be clear and convincing, showing an intent to change that domicile (*see, Matter of Bodfish v Gallman, supra,* p 459). Thus, when it appeared that the taxpayer's motive in moving to England may have been to avoid an intolerable marriage, despite the fact he worked and lived there for 16 years, the Court of Appeals failed to find sufficient evidence of intent to change domicile (*Matter of Shapiro v State Tax Commn.,* 50 NY2d 822, *revg* 67 AD2d 191). Similarly, when the taxpayer returned to this State because of his wife's ill health, after he had acquired a large estate and extensive business involvements in Jamaica, the Court of Appeals found that sufficient steps had not been taken to show a clear and convincing intent to establish a new domicile in Jamaica (*Matter of Reeves v State Tax Commn.,* 52 NY2d 959, *revg* 74 AD2d 934).

This court has rejected contentions that acceptance of employment in, and relocation to, foreign countries evinced and intent to change one's domicile (*see, Matter of Babbin v State Tax Commn.,* 67 AD2d 762, *affd* 49 NY2d 846; *Matter of Klein v State Tax Commn., supra; Matter of Bodfish v Gallman, supra; see also, Matter of Minsky v Tully,* 78 AD2d 955; *but cf. Matter of Bernbach v State Tax Commn.,* 98 AD2d 559). Similarly moves to other States in which permanent residences are established do not necessarily provide clear and convincing evidence of an intent to change one's domicile (*see, e.g., Matter of Zinn v Tully,* 54 NY2d 713, *revg* 77 AD2d 725). Moves by corporate executives to new assignments are frequently made during the climb up the

ladder of success. It is for this very reason that we upheld respondent and reaffirmed the principle that changes in residence occasioned solely to accept transfers in accordance with the wishes of an employer are not dispositive of a change in domicile (*Matter of Mercer v State Tax Commn.*, 92 AD2d 636; *Matter of Bernbach v State Tax Commn., supra*). It is undisputed that the changes in petitioners' residences were caused solely because of transfers made by the employer and that they would go anywhere they were assigned. There is neither evidence nor a basis for any contrary conclusion.

In short, courts generally defer to respondent's broad fact-finding powers in determining whether a taxpayer has changed his domicile. Although proof in this record may also support a contrary conclusion, we cannot say that substantial evidence is lacking to sustain the determination made here by respondent (*see, Matter of Babbin v State Tax Commn., supra,* 49 NY2d, at pp 847-848). Accordingly, we would confirm the determination and dismiss the petition.