■ In the Matter of RICHARD E. GRAY et al., Petitioners, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [651 NYS2d 740] —Cardona, P. J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which partially sustained a personal income tax assessment imposed under Tax Law article 22.

Petitioners lived in New York for many years with extensive family, business and social contacts here. After petitioner Richard E. Gray (hereinafter Gray) began experiencing medical problems in the early 1980s, petitioners began to consider moving to a climate that would be better for his health. After petitioners unsuccessfully attempted to build a home in Georgia, they executed a one-year lease in 1985 for a condominium in Amelia Island, Florida. In November 1986, petitioners purchased a lot at the same location and began plans to build

a home. Petitioners leased another condominium in Amelia Island from December 1986 to May 1987 and spent the summer of 1987 in the City of Syracuse, Onondaga County. Subsequently, they leased an apartment in Amelia Island from September 15, 1987 to October 1988.

Although petitioners were renting residential property in Florida, they continued to maintain their home in the Village of Fayetteville, Onondaga County, and spent considerable time there. Late in 1986, petitioners started the legal process of transferring ownership of their New York home to a partnership formed by their children. In February 1987, petitioners transferred roughly 40% of the ownership to their children and transferred another 40% in November 1988, leaving petitioners with only a 20% interest in the property. The remaining interest was transferred in 1989. By Gray's own count, through the use of a travel log he had kept, petitioners spent 183 days in Florida and 145 days in New York in 1987. In 1988, they spent 266 days in Florida and 67 days in New York.

With respect to petitioners' business interests, up until September 1987 Gray was the controlling shareholder and chairperson of the board of Gray-Syracuse, Inc., a New York-based manufacturing corporation, as well as two smaller corporations. Although Gray was still the controlling shareholder and actively participated in the operation of the various businesses, in the early 1980s he began to reduce his role in the operation of Gray-Syracuse. He was, however, in his own words, "deeply, deeply involved" in the operation of Gray-Syracuse and felt his involvement was "vital to the health of the company". Through 1987 and 1988, he maintained an office in New York for the purpose of conducting business for Gray-Syracuse and the two smaller corporations. He was also seeking potential purchasers for his ownership interest of Gray-Syracuse. A purchaser was eventually located and the sale of his majority interest was completed in September 1987.

Beginning in the early 1980s, Richard Gray began to resign his membership in all but three New York organizations and in 1985 began to join various social organizations in Florida, including groups that required members to be permanent residents of Amelia Island. In September 1985, Richard Gray executed a declaration of domicile and citizenship in Florida. Petitioners were issued Florida driver's licenses in November 1985 and they registered to vote in Florida in February 1986. Furthermore, in 1986, petitioners executed documents, such as passports and living wills, identifying Florida as their resi-

dence. In 1986, petitioners began seeing a Florida dentist and in 1988, at the latest, began consulting Florida doctors. By 1988, the bulk of petitioners' charitable contributions were to Florida organizations.

In 1987 and 1988, petitioners filed New York nonresident personal income tax returns. Upon audit of those returns, the Department of Taxation and Finance determined that petitioners were domiciliaries of New York in 1987 and 1988 and issued a notice of deficiency asserting deficiencies in income tax in the amounts of $779,360.50 for 1987 and $60,400.13 for 1988. This determination was appealed to the Division of Tax Appeals. Following a hearing before an Administrative Law Judge (hereinafter ALJ) and a remittal, it was ultimately found by the ALJ that petitioners were domiciliaries of New York until September 15, 1987 and a recalculation of the deficiency to reflect that finding was ordered. Petitioners thereafter appealed to respondent Tax Appeals Tribunal, which upheld the ALJ's determination. The Tribunal therefore canceled that part of the deficiency calculated for the year ending December 31, 1988. This CPLR article 78 proceeding followed.

We confirm. It is well settled that domicile is established by physical presence and an intent to remain indefinitely (*see, Matter of McKone v State Tax Commn.*, 111 AD2d 1051, 1053, *affd* 68 NY2d 638). Intent is frequently determined by looking to the acts of the party claiming domicile (*id.*, at 1053). The taxpayer has the burden of proving a change of domicile by clear and convincing evidence (*see, Matter of Buzzard v Tax Appeals Tribunal*, 205 AD2d 852; *Matter of Kornblum v Tax Appeals Tribunal*, 194 AD2d 882) and this Court will not overturn an agency determination that is supported by substantial evidence (*see, Matter of Buzzard v Tax Appeals Tribunal, supra*).

In our view, the evidence indicating that petitioners retained their New York domicile until Gray's primary business interest had been sold provided substantial evidence for the conclusion that petitioners had not abandoned their New York domicile until September 15, 1987 (*see, Matter of Kartiganer v Koenig*, 194 AD2d 879; *Matter of Clute v Chu*, 106 AD2d 841; *Matter of Zinn v Tully*, 77 AD2d 725, 726 [dissenting mem], *revd on dissenting mem below* 54 NY2d 713). While it is true that the facts establishing petitioners' firm ties to the Florida area could have provided substantial evidence for a contrary determination by respondents, "we are not at liberty to substitute our judgment for an agency's reasonable determination supported by substantial proof in the record merely

because one could reasonably reach a different conclusion on the basis of the evidence presented" (*Matter of Clute v Chu, supra*, at 843; *see, Matter of Buzzard v Tax Appeals Tribunal, supra*, at 853-854; *Matter of Kartiganer v Koenig, supra*, at 882). The ALJ and the Tribunal agreed that the facts of this case presented " 'an extraordinarily difficult case to decide' " and, under the circumstances presented, we find no reason to disturb the final resolution.

Mikoll, White and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.