OPINION OF THE COURT
Renee R. Roth, S.
In this probate proceeding, the proponents move to strike the notice of appearance of a potential objectant, the United States of America.
Decedent, Ernest Dubelier, died on November 12, 1986 at the age of 92. He was not survived by any known distributees. *181 In 1984, a proceeding to appoint a conservator of Mr. Dubelier was commenced by Henry Scian, a distant relative by marriage. On January 24, 1985, by order of the Supreme Court, New York County, Mr. Scian was appointed coconservator of Mr. Dubelier. On August 21, 1985, Mr. Dubelier allegedly executed the propounded instrument in which he left $365,000 in preresiduary bequests to six beneficiaries (including four charities) and disposed of his residuary estate (worth well over a million dollars) equally to Anna Chase, his housekeeper, and Mr. Scian.
The probate petition does not mention any prior will of the decedent filed in this court or any beneficiary of such prior will who would be adversely affected by the instrument offered for probate. However, the United States of America (the Government) filed an appearance as contingent legatee of the residuary estate under a joint will executed in 1966 by the decedent and his wife and admitted to probate by this court in 1974 upon the death of decedent’s wife.
SCPA 1403 (1) (d) provides that in a proceeding to probate a will, process must issue to "[a]ny person designated as beneficiary * * * in any other will of the same testator filed in the surrogate’s court of the county in which the propounded will is filed, whose rights or interests are adversely affected by the instrument offered for probate.”
Accordingly, in order for the Government to receive process under this section, it must establish that there is "another” will of the testator; that under the other will the Government is a beneficiary; that the interest of the Government under the other will is adversely affected by the instrument offered for probate and finally that the other will was filed in this court.
The two issues raised by proponents’ motion to strike the appearance of the objectant are whether the joint will qualifies as "another” will of the decedent and, if so, whether it is on file in this court.
However, the Government contends that, whether or not it is a necessary party under SCPA 1403, it is nevertheless entitled to file objections under SCPA 1410 as a "person whose interest in property or in the estate of the testator would be adversely affected by the admission of the will to probate”. As later discussed, a person need not be a "necessary party” in order to be authorized under SCPA 1410 to file objections.
The following facts are undisputed. On April 18, 1966 Ernest and Carmen Dubelier executed a single-page joint will. *182 In paragraph second of the joint will each spouse bequeaths to the other all of his or her property.
Paragraph third states that their joint will "is the result of a contractual agreement between husband and wife and, except with the consent of both, is irrevocable as to the one first dying” (emphasis added).
Paragraph fourth provides that in the event "that the survivor fails to execute another will after the death of the one first dying, then we or I, the survivor, give, devise and bequeath all our or my property, as the case may be to the United States of America” (emphasis added).
Carmen Dubelier died first. Upon her death, the joint will was admitted to probate in this court.
Two seemingly opposite decisions, one by the Court of Appeals, the other by the Appellate Division, Third Department, have been cited by the parties. In both decisions, the issue was whether the beneficiaries of an earlier joint will, adversely affected by the later instruments, were necessary parties. However, in both instances, unlike the instant case, the later will had already been admitted to probate and the beneficiaries sought to have the decree vacated on the ground that they had not been served with process pursuant to Surrogate’s Court Act § 140 (1) (d) (now SCPA 1403 [1] [c]).
The earlier decision is Matter of Elwyn (285 App Div 91) decided in 1954. The Elwyn joint will provided that upon the death of the first of them, all of his or her property would pass to the survivor and, upon the survivor’s death, their daughter-in-law was to receive a substantial bequest. The joint will was admitted to probate as the will of the wife, the first to die. Mr. Elwyn then executed a new will reducing his daughter-in-law’s interest. After the will was admitted to probate, the daughter-in-law sought to vacate the decree on the ground that she was not served with process, even though a necessary party under Surrogate’s Court Act § 140 (a predecessor section of SCPA 1403 [1] [d]) as a beneficiary of "another will of the same testator” on file in the court.
The Surrogate ruled against the daughter-in-law holding that the joint will by its terms was solely the will of Mrs. Elwyn. The Appellate Division reversed on the ground that the will by its terms was also Mr. Elwyn’s will.
The second and later decision is Matter of Brinkmann (21 NY2d 804 [1968]). Again, a "beneficiary” of a joint will sought to vacate probate of a later will on the ground that she had *183 not been served with process pursuant to Surrogate’s Court Act § 140 (1) (d). As in the instant case and as in Elwyn (supra), a joint will was executed by a husband and wife. However, in the Brinkmann will each spouse gave the surviving spouse "all property” to be his or hers "absolutely” but provided that should the survivor die without having made a disposition of "my said property then and in that event only, I bequeath all my property then remaining to my brothers and sisters”.
Mrs. Brinkmann died first and the joint will was admitted to probate as her will. Mr. Brinkmann executed a new will which adversely affected the beneficiaries under the earlier joint will. The later will was admitted to probate in the same court. Mrs. Brinkmann’s sister, a beneficiary under the joint will, sought to vacate the probate decree because she had not been served with process.
The Surrogate denied the application to reopen the probate proceeding holding that the joint will by its terms was not an earlier will of Mr. Brinkmann but was solely the will of Mrs. Brinkmann. The Appellate Division, Second Department, applying Elwyn (supra), reversed, with one dissent, holding that the 1947 joint will was an earlier will of Mr. Brinkmann on file in the same court (Matter of Brinkmann, 28 AD2d 550).
The Court of Appeals reversed solely on the opinion of the dissenting Justice below, which stated: "In my opinion, according to the language of the joint will, it is the will of the one who predeceased the other * * * [and] upon the death of the wife, the joint will became her will and was no longer the will of her husband. It was therefore not within the purview of section 140 of the Surrogate’s Court Act”. (Supra, at 551.) As a result, the contingent beneficiary under the joint will was not a beneficiary under "another” will of the husband and did not have to be cited in the proceeding to probate the husband’s "later” will.
Although there is an apparent conflict between Brinkmann (supra) and Elwyn (supra), there is no real disagreement between the Appellate Division and the Court of Appeals, inasmuch as each court emphasized that its conclusion was based upon the intent of the testator. The different conclusions are the result of different testamentary instruments and do not reflect the use of different criteria in arriving at the decision.
This analysis of the decisions is supported by the commenta *184 tors. Shortly after Brinkmann (supra) was decided, John L. Goldman noted that: "The Brinkmann and Elwyn cases may be distinguished on the basis of the particular testamentary instruments involved” (Goldman, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1403, 1987 Pocket Part, at 53; emphasis supplied). Additionally, Paul J. Powers, in a "new look” at the same decision in 1977, observed: "That disposition, which was adopted by the Court of Appeals, might well be said to represent only a ruling upon the peculiar text of that instrument rather than a construction of SCA § 140 (SCPA § 1403)” (Powers, Supp Practice Commentaries, McKinneys Cons Laws of NY, Book 58A, SCPA 1403, 1987 Pocket Part, at 50; emphasis supplied).
Clearly, it is not possible to decide in the abstract whether a joint will, after being probated as the will of the spouse first dying, remains operative as a will of the survivor. Each decision must be based upon the testator’s intent, which can be ascertained only from the instrument itself.
In light of this criterion, the court finds the instant case distinguishable from Brinkmann (supra). Despite some of the factual similarities, comparison of the language used in the two joint wills clearly establishes that the intent of their respective makers was quite different. The Brinkmann instrument, in pertinent part, reads as follows:
" 'first: I, said gasper henry brinkmann, do hereby give, devise and bequeath unto my beloved wife, mary * * * all my estate * * * to be hers absolutely * * * but should she die without having * * * made any disposition of my said property, then and in that event only, I give, devise and bequeath all my property then remaining to my brothers and sisters * * * second: And I, mary t. brinkmann * * * do in like manner hereby give, devise and bequeath * * * unto my beloved husband * * * all my property * * * to be his absolutely * * * but should he die without having * * * made any disposition of my said property, then and in that event only, I give, devise and bequeath all my property then remaining to my brothers and sisters’ ” (Matter of Brinkmann, 28 AD2d 550, supra; emphasis supplied).
Such language indicates, as the Court of Appeals determined, that the Brinkmann joint will was intended to operate as the independent (though joint) will of the spouse first dying, leaving his or her entire estate to the surviving spouse and the portion of the same undisposed of by the survivor at her *185 or his death to the named third parties. However, the joint will contained no effective provision with respect to the individual property of the surviving spouse. Consequently, it could not be considered "another will” of the surviving spouse when he or she made a new will.
The joint will under consideration, in pertinent part, reads as follows:
"second: I give, devise and bequeath all the rest, residue and remainder of my estate * * * to my surviving spouse * * * with full power of sale * * *
"fourth: In the event that both of us die in the same common accident or that the survivor fails to execute another Will after the death of the one first dying, then we or I, the survivor, give, devise and bequeath all * * * our or my property * * * to the United States of America” (emphasis supplied).
Under these terms, the Dubelier joint will was intended to be effective as a reciprocal disposition by each spouse of his or her own property for the benefit of the survivor; a joint disposition of the property of both spouses to the Government in the event of their simultaneous death and a disposition by each spouse of his or her property, as surviving spouse, to the Government in the event that he or she (the survivor) failed to execute a later will.
The court holds that the 1966 joint will is a will of Ernest Dubelier within the provisions of SCPA 1403 (1) (d). It is signed by him as one of the testators. The opening paragraph declares that the will is the "will of each of us”. The dispositive paragraphs refer to "our property” and contain directions by "I, the survivor” and, as noted earlier, paragraph third declares the will to be the result of "a contractual agreement between husband and wife”. It is therefore not solely the will of Mrs. Dubelier, the first to die.
If Mr. Dubelier had died without executing a new will, the Government, rather than his intestate distributees, would have inherited his estate. This is to say that the Government, which receives no benefit under the propounded instrument, is a beneficiary under "another” will of the testator adversely affected by the probate of the propounded will.
Moreover, as briefly mentioned earlier, even if the Government is not a necessary party under SCPA 1403 (1) (d), the Government nevertheless has a right to file objections to probate under SCPA 1410.
*186 The decision by the Court of Appeals in Brinkmann (supra) concerned only the definition of necessary parties under the precursor of SCPA 1403 (1) (d) and not standing to file objections under SCPA 1410.
The difference between the definition of a "necessary party” under SCPA 1403 and the definition of a party having "standing to object to probate” under SCPA 1410 has been noted in the commentaries (see, Turano, Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA 1403, 1987 Pocket Part, at 46). Indeed, the necessary parties enumerated in SCPA 1403 do not include all those who have standing to object to probate. For example, SCPA 1403 does not require service of process on persons adversely affected by the purported exercise of a power of appointment, although the official probate petition requires that such persons be listed (see, Matter of Emmons, 93 Misc 2d 615, for an explanation of this deliberate omission).
To foreclose the Government from appearing and filing objections would be contrary to the language and intent of SCPA 1410. As noted earlier, in the absence of a later will (valid, of course), the Government would be the sole legatee of this estate. As such, it has standing to file objections. It cannot be denied the right to appear. Otherwise, it would not be bound by the probate decree (Matter of Tracy, NYLJ, Apr. 4, 1986, at 16, col 6; Matter of Emmons, supra).
The other issue raised by the proponent is whether the joint will is "on file” in this court. Matter of Brinkmann (supra) also appears to hold that a joint will cannot be a "will on file” for purposes of determining the parties required to be served with process in the proceeding to probate the later will of the surviving testator under SCPA 1403 (1) (d) (successor to Surrogate’s Ct Act § 140 [1] [c]).
Although this holding was stated in Brinkmann (supra), its origins lie in Elwyn (supra). After ruling that the joint will was an earlier will of Mr. Elwyn, the majority in the Appellate Division held that: "While the earlier will had not technically been filed as the will, of Sherman R. Elwyn in the office of the Surrogate, it was on file there in the estate of Cornelia Elwyn and we therefore hold that section 140 was applicable * * * [and] mandatory.” (Matter of Elwyn, 285 App Div 91, 94, supra.)
The Court of Appeals in its short opinion in Matter of Brinkmann (21 NY2d 804, 806, supra) observed tersely: "We *187 disagree with the rule stated in Matter of Elwyn * * * with respect to the application of paragraph (d) of subdivision 1 of section 140 of the Surrogate’s Court Act”.
This court does not know what procedures were followed with respect to filing the joint wills in Brinkmann (supra) and Elwyn (supra). It would appear from the above-quoted majority opinion in Elwyn that the joint will remained at all times in Mrs. Elwyn’s probate file. But in both Brinkmann and Elwyn, the joint will legatees were seeking to vacate probate decrees. The Government has no such problem here.
Furthermore, there is a statutory procedure with respect to transferring joint wills where the testators die in different counties. After the death of the surviving testator of a joint will, SCPA 2504 provides for the transfer of such will from the county where it was first probated to the county where the survivor’s estate will be administered. Surely, if a joint will can be transferred from one county to another, it may also be transferred from the file of one decedent to the file of another decedent in the same court. When such transfer is made, the joint will becomes, in the most technical sense of SCPA 1403 (1) (d), a will of the second testator filed in this court.
Accordingly, the court directs the chief clerk to transfer the joint will in question from the file of Carmen Dubelier to the file of Ernest Dubelier for purposes of this proceeding. Upon its conclusion, a true copy may be substituted and the original will returned to Mrs. Dubelier’s file (see, 2A Warren’s Heaton, Surrogates’ Courts § 180, 7 [g] [6th ed]).
Based upon the foregoing, the motion to strike the appearance of the United States of America is denied.