[854 NYS2d 10]

MORRIS I. GLETZER, Also Known as MORRIS I. GLECER, Respondent, v AMOS HARRIS, Appellant. GREENPOINT MORTGAGE FUNDING, INC., et al., Appellants, v MORRIS I. GLETZER, Also Known as MORRIS I. GLECER, Respondent, et al., Respondents.

First Department, March 13, 2008

**APPEARANCES OF COUNSEL**

*Tannenbaum Helpern Syracuse & Hirschtritt LLP,* New York City (*David A. Pellegrino* and *David J. Kanfer* of counsel), for Amos Harris, appellant.

*Hofheimer Gartlir & Gross, LLP,* New York City (*David L. Birch* of counsel), for Greenpoint Mortgage Funding, Inc., and another, appellants.

*Altman Schochet LLP,* New York City (*Zalman Schochet* of counsel), for Morris I. Gletzer, respondent.

**OPINION OF THE COURT**

SAXE, J.

These two related appeals present issues arising under CPLR 5014 where a judgment creditor who seeks a renewal judgment in order to continue a lien against the judgment debtor's real property after the first 10 years of the judgment's life either cannot or does not obtain the necessary renewal judgment prior to the expiration of the first 10-year period.

Plaintiff Morris Gletzer obtained a judgment against defendant Amos Harris for $470,437.50 that was docketed on October 23, 1991. Upon its docketing, the 1991 judgment acted as a lien on any real property owned by Harris, which covered a condominium unit at 143 Avenue B in Manhattan. However, Gletzer asserts that, because there were other judgments against Harris that exceeded the equity in the condominium unit and that had priority over his judgment, he could not collect on the judgment by foreclosing on the unit. Gletzer attempted to enforce the judgment in Missouri in 2000, but was met with a challenge by Harris to service of process in the 1991 action. It was not until 2003, following discovery and a hearing, that the Missouri court finally issued a decision rejecting Harris's challenge.

Although a money judgment is valid and enforceable for a period of 20 years (CPLR 211 [b]), under New York law such a judgment only remains viable *as a lien against real property* for 10 years (CPLR 5203 [a]). Renewal of the lien for an additional 10-year period may be obtained in accordance with the provisions of CPLR 5014, or, under certain circumstances not applicable here, the lien may be extended for a limited period pursuant to the provisions of CPLR 5203 (b). To obtain what CPLR 5014 terms a renewal judgment, through which the judgment creditor's lien against real property can be extended for a second 10-year period, CPLR 5014 requires commencement of a new plenary action between the same parties.

In accordance with CPLR 5014, on October 22, 2001, just prior to the expiration of the 10-year period in which his judgment served as a lien against Harris's property, Gletzer brought the underlying action for a renewal judgment, so that his lien against Harris's property could be continued for another 10-year period. However, Harris challenged his right to do so, moving to dismiss the action on personal jurisdiction grounds, asserting that he was not a New York domiciliary, and the issue was referred to a Special Referee for a hearing. At the hearing, the parties stipulated that Harris had lived in the Avenue B

condominium before moving to Missouri in 1991 and that he thereafter continued to own, and to receive utility and telephone bills for, the condominium. Gletzer also relied upon Harris's deposition testimony in the Missouri proceeding, in which he acknowledged making regular bimonthly trips to New York as well as other visits here, during which visits he stayed at the condominium. Harris offered no evidence beyond the stipulation. The Referee found upon the evidence that Harris was a New York domiciliary and that therefore the court had personal jurisdiction over him. The IAS court confirmed the Referee's report, granting as well Gletzer's application for an order permitting him to renew the judgment lien nunc pro tunc as of October 23, 2001.

In a separate proceeding brought against Gletzer pursuant to CPLR 5239 by two mortgage companies that had recorded mortgages against Harris's condominium in 2003, i.e., before the court granted Gletzer the renewal judgment, the mortgage companies sought vacatur of the nunc pro tunc treatment of the renewal judgment or, in the alternative, an order that their liens dating from 2003 are prior and superior to Gletzer's lien on the Avenue B condominium. The IAS court denied the petition.

█ On the appeal in the CPLR 5014 action, defendant Harris argues that the IAS court (1) improperly imposed on him, rather than on Gletzer, the burden of proving his domicile, (2) improperly ruled on the domicile issue in view of the evidence, and (3) improperly failed to provide him with the opportunity to present additional evidence after Gletzer argued that the burden shifted to Harris to prove a change of domicile and that Harris failed to satisfy that burden. We reject these contentions. Based upon the evidence, the court was justified in concluding that personal jurisdiction over Harris was proper, holding that the burden had shifted to Harris to prove a change of domicile and that he had failed to satisfy that burden.

Importantly, it was Harris who initially placed the question of domicile in issue by basing his motion to dismiss on the claim that he was a nondomiciliary of New York. Therefore, there was no reason to impose on Gletzer or on the court a requirement to notify Harris of an intent to address the issue. On the merits, once a party's domicile is established, the party asserting a change of that domicile must prove that change by clear and convincing evidence (*see Matter of Pingpank*, 134 AD2d 263, 265 [1987]). The stipulated fact that Harris established *resi-*

*dence* in Missouri in 1991 did not dispose of the issue, since the question for purposes of personal jurisdiction was one of domicile, and a person may establish a residence in another place while maintaining his former domicile (*see Gould v Gould*, 235 NY 14, 29 [1923]). Since Gletzer's initial burden on the issue was easily satisfied with the showing of Harris's undisputed prior New York domicile, the burden of proof was properly shifted to Harris. Harris's failure to offer evidence satisfying that burden of proof warranted the determination that the New York court had personal jurisdiction over him, and therefore the sought renewal of the 1991 judgment lien was properly granted.

We address the other issue raised by Harris, namely, the propriety of granting entry of the renewal judgment nunc pro tunc, in the context of the appeal from the order in the CPLR 5239 proceeding brought by Greenpoint Mortgage Funding, Inc. and Copplestone Finance Company Limited against Gletzer. We need not decide whether in other circumstances it may be within the court's discretion to enter such a renewal judgment nunc pro tunc to the date of the application; the particular submissions provided to the court in the course of the CPLR 5239 proceeding establish that the exercise of discretion was improvident here.

The language of CPLR 5014 as it existed prior to 1986 was understood to preclude judgment creditors from bringing an action for a new lien until after the first 10-year period had elapsed, which necessarily created a "lien gap" (*see Brookhaven Mem. Hosp. v Hoppe*, 65 Misc 2d 1000 [1971]), allowing other judgment creditors to "slip in with priority" (*see* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5014:2). The Legislature therefore amended the statute in 1986 to add a final paragraph intended to solve this problem by permitting commencement of the action for a renewal judgment up to a year before the expiration of the 10-year period (L 1986, ch 123, § 1). The added final paragraph reads:

> "An action may be commenced under subdivision one of this section during the year prior to the expiration of ten years since the first docketing of the judgment. The judgment in such action shall be designated a renewal judgment and shall be so docketed by the clerk. The lien of a renewal judgment shall take effect upon the expiration of ten years from the first docketing of the original judgment."

Gletzer points to the use of the mandatory "shall" in the final sentence of this provision. He argues that by providing that the renewal judgment lien *shall* take effect upon the expiration of 10 years from the docketing of the original judgment, the Legislature intended to ensure that as long as the renewal judgment was properly sued for, it would take effect at the moment the first 10-year period expired, regardless of whether it was granted before or after the expiration of the 10-year period. That is, using Gletzer's reasoning, the statute would generally *require* nunc pro tunc treatment wherever the renewal judgment was granted after the first 10 years had already expired.

We reject Gletzer's reading of the statute. A statute should be construed in light of the problem to be cured and the event that prompted the enactment (McKinney's Cons Laws of NY, Book 1, Statutes § 95; *Matter of New York Life Ins. Co. v State Tax Commn.*, 80 AD2d 675, 677 [1981], *affd* 55 NY2d 758 [1981]). Here, in amending CPLR 5014 to add the language that "[t]he lien of a renewal judgment shall take effect upon the expiration of ten years from the first docketing of the original judgment," the Legislature's intent was to eliminate the rule of *Brookhaven* (65 Misc 2d 1000 [1971]) by giving judgment creditors the opportunity to take action to renew their lien early enough to avoid a lien gap. However, there is no indication, or any reason to believe, that it intended to preclude any possibility of even a brief lien gap, under all circumstances, or to protect the judgment creditor from the priority otherwise enjoyed by an intervening recorded lien. Rather, as commentators who have considered the provision have concluded, the final sentence of CPLR 5014 is intended to avoid penalizing the judgment creditor who obtained the renewal judgment before the first 10 years were finished, by ensuring that no time would be lost from the second 10-year lien term by having it overlap with the first 10-year period (*see* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5014:2; 10 Carmody-Wait 2d § 67:4, at 78-79 n 3). Specifically, Professor Siegel explains that the final sentence ensures that

> "[a]s long as the new judgment is rendered within the 10-year lien period, the lien that the new judgment carries takes effect not immediately, but only upon the expiration of the first 10-year lien period, avoiding a lien gap and at the same time giving the judgment creditor a full 10 years of new lien" (Siegel, Practice Commentaries, *supra*).

If the intent of the Legislature had been to permit a judgment creditor to automatically avoid any lien gap as long as an action under CPLR 5014 was commenced even a day before the first 10-year period expired, it would have been a simple matter to so state. Moreover, if that were the case, it would have been unnecessary to give judgment creditors a full year before the lien's expiration to bring an action for a renewal judgment.

It seems apparent that the manner in which the Legislature intended to avoid the lien gap was by authorizing judgment creditors to commence actions for renewal judgments early enough that they could actually obtain the renewal judgment before the first lien had expired.

Also contrary to Gletzer's view of his right to priority over intervening mortgagees is CPLR 5203 (a), which concerns priorities and liens on real property. It provides that where a judgment creditor has docketed a judgment against the judgment debtor, the judgment debtor may not transfer his or her interest in real property free of the lien of that judgment creditor "until ten years after filing of the judgment-roll." If that provision is to be given any effect, absent the docketing of a renewal judgment, at the end of the 10-year period, another party must be able to obtain an interest in the judgment debtor's property free of the lien of the former judgment creditor.

It is important to keep in mind that obtaining a renewal judgment entails more than a ministerial rubber stamp. Gletzer did not have a *right* to the renewal judgment. Indeed, had he been unable to sustain his burden of establishing the court's personal jurisdiction over Harris, he would not have been entitled to any renewal judgment (*see* Weinstein-Korn-Miller, NY Civ Prac ¶¶ 5014.00, 5014.07 [2d ed]). Thus, at the time his first lien expired on October 23, 2001, all that he held against Harris was a money judgment and a right to seek another 10-year lien, *which Harris had a right to, and did, dispute*. Any potential lender searching the records in New York after October 23, 2001 would have had notice only of the already expired, and not renewed, 1991 judgment.

The cases relied upon by the IAS court to conclude that Gletzer's lien should be treated as continuing without any "lien gap" are not on point. In *Matis v DeLasho* (191 Misc 2d 338 [2002]), a judgment debtor who obtained a discharge in bankruptcy in February 2000 thereafter sought to preclude a judgment creditor with a 1992 judgment from obtaining a renewal judgment in order to extend her lien against the bankrupt judg-

ment debtor's real property. The court held that the action for a renewal judgment did not violate bankruptcy law because, although 11 USC § 524 (a) (2) discharges debts, it does not affect valid liens, which pass through bankruptcy unimpaired. Since the first 10-year lien term had not yet expired at the time of the decision, the holding has no relevance to situations in which the first lien expired prior to the grant of the renewal judgment.

In *Matter of Buchardt* (114 BR 362 [ND NY 1990]), Merchants National Bank and Trust Co. had obtained a money judgment of approximately $7,000 against Judith Buchardt that was docketed on September 16, 1977, and, following an action for a renewal judgment properly brought in July 1987, it obtained a renewal judgment entered on September 18, 1987. In her 1989 bankruptcy proceeding, Buchardt claimed that the lien was improper because she was entitled to a $10,000 homestead exemption under CPLR 5206 (a) and Debtor and Creditor Law § 282. The Bankruptcy Code provision she relied on, 11 USC § 522 (f) (1), provides that a debtor may avoid a judicial lien on real property, but it first became effective in 1979, that is, after Merchants' initial lien was already in existence. The court first concluded that section 522 (f) (1) could only be applied to property rights created after the enactment of the statute, and that, accordingly, Buchardt could not avoid Merchants' original 1977 lien (114 BR at 363-364). The court then went on to reason that the lien created by the renewal judgment "relate[d] back" to the 1977 lien, so Buchardt's reliance on section 522 to seek to avoid Merchants' renewed lien was unavailing (*id.* at 365). Interestingly, the facts in *Buchardt* are similar to the case now before us in one respect: it appears that the renewal judgment there was entered shortly (two days) *after* the first 10-year period had expired. However, the discussion contains no indication that Buchardt contended that the brief hiatus was critical or that it altered Merchants' rights. And, notably, the court carefully phrased its holding, "conclud[ing] that Merchants' 1987 lien relates back to the 1977 lien *for the purposes of analysis under Code § 522*" (*id.* at 364-365 [emphasis added]). Consequently, nothing in the Bankruptcy Court's *Buchardt* opinion may be read to support the conclusion that the renewal lien must always be considered a mere extension of the initial lien, maintaining its priority regardless of how much time elapses before the renewal judgment is granted and regardless of the priority claims of other intervening recorded mortgages.

While the IAS court correctly pointed out that *Mansfield State Bank v Cohn* (58 NY2d 179 [1983]) is not directly applicable,

since it involved the priority rights of a judgment creditor where a foreign judgment was vacated on appeal and then reinstated upon further appeal, the discussion in that case is instructive in regard to the use of nunc pro tunc treatment of orders to give a party priority over the rights of some other entity. The Court said,

> "Where a foreign judgment is filed in New York under CPLR 5402, that filing is then vacated when the foreign judgment is reversed on intermediate appeal, and a new filing thereafter made when the foreign judgment is reinstated on further appeal, the lien of the judgment creditor in New York dates from the date of the new filing. The inherent power of a court to correct clerical errors in a prior determination may not be invoked to effect the retroactive creation of substantive rights when the rights of third parties have intervened" (*id.* at 180-181).

It therefore affirmed the denial of the judgment creditor's application to file its judgment nunc pro tunc to the original filing date and for a declaration that its judgment had priority over subsequent judgment creditors' filings. Critical in *Mansfield State Bank* was the Court's recognition that where a judgment creditor's rights have temporarily been lost, even through no fault of the creditor, they may properly be required to give way to those of an intervening creditor.

The nature of nunc pro tunc relief is to correct procedural irregularities where there is no prejudice to third parties (*see Jewett v Schmidt*, 108 App Div 322, 325 [1905], *affd* 184 NY 608 [1906]; 49 CJS, Judgments § 124). "[A] judgment or order may not be entered nunc pro tunc in order to record a fact as of a prior date when the fact did not exist" (*see* 73 NY Jur 2d, Judgments § 67). In specifically addressing the use of the nunc pro tunc device, the Court in *Mansfield State Bank* made a point of elaborating on why nunc pro tunc relief would have been improper:

> "The relief sought by the bank was not to correct any irregularity, mistake, omission or other error; the bank sought the creation of a new lien retroactive to the date of its prior lien which, on its own motion, had been effectively nullified. The would-be invocation of a court's inherent power to correct error in a prior judgment is unavailing as a predicate for the creation of new substantive rights. The

rights of the third party title insurance company had effectively intervened" (58 NY2d at 182-183).

Here, petitioners Greenpoint and Copplestone Finance demonstrated that they properly recorded mortgages establishing liens against Harris's condominium unit at a time when the official records indicated that the only extant lien had expired by October 23, 2001. Once the county docket book reflected only Gletzer's expired lien, other creditors were fully entitled to rely upon that fact and make mortgage loans on the assumption that their mortgage liens would have priority. They had no obligation to take into account the possibility that Gletzer might, in the future, successfully obtain a new lien against Harris's property.

We observe that Gletzer's respondent's brief on appeal contains assertions of belief and innuendo challenging the bona fides of Greenpoint's and Copplestone Finance's mortgages. However, we also note the complete absence of anything of an evidentiary nature in that regard. Barring a showing establishing irregularities in the acquisition or recording of intervening mortgage liens, a judgment creditor whose lien expired and whose renewal judgment was not granted until after the recording of the intervening mortgages should not normally be entitled to the nunc pro tunc treatment of the renewal lien in order to circumvent the priority of those intervening mortgages. We therefore view as an improvident exercise of discretion the entry of the renewal judgment nunc pro tunc, rather than as of the date Gletzer was finally able to obtain and docket the renewal judgment in 2005.

This discussion does not address remedies that may be available to a judgment creditor in circumstances where it can be established that the judgment debtor intentionally delayed entry of a renewal judgment lien by the use of a sham jurisdictional defense involving the need for an evidentiary hearing, causing the lien's loss of priority. We leave the Legislature with the open question of whether the potential problem can be avoided by statutory amendment, perhaps providing for a temporary extension of the lien, or increasing the amount of advance time in which a renewal judgment may be sought, or possibly—as mentioned in the Office of Court Administration memorandum commenting on the 1986 amendment to CPLR 5014—simply making the lien against real property coextensive with the 20-year term of the judgment itself (*see* Mem of Off of Ct Admin, 1986 McKinney's Session Laws of NY, at 3379).

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered February 15, 2005, which confirmed a Referee's report on personal jurisdiction and granted plaintiff Gletzer's motion for summary judgment renewing his 1991 judgment lien against defendant Harris as of October 23, 2001, should be affirmed, with costs. Order, same court and Justice, entered June 26, 2007, which denied the petition to vacate the nunc pro tunc entry of the renewal judgment or give priority to petitioners' mortgages over Gletzer's renewal judgment, should be reversed, on the law, without costs, the petition granted and Gletzer's renewal judgment entered as of the date the relief was granted, and petitioners' mortgages declared to have priority over Gletzer's lien.

LIPPMAN, P.J., MAZZARELLI, WILLIAMS and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered February 15, 2005, affirmed, with costs. Order, same court, entered June 26, 2007, reversed, on the law, without costs, the petition granted and Gletzer's renewal judgment entered as of the date the relief was granted, and petitioners' mortgages declared to have priority over Gletzer's lien.