468

[909 NE2d 1224, 882 NYS2d 386]

MORRIS I. GLETZER, Also Known as MORRIS I. GLECER, Plaintiff, v AMOS HARRIS, Defendant.

GREENPOINT MORTGAGE FUNDING, INC., et al., Respondents, v MORRIS I. GLETZER, Also Known as MORRIS I. GLECER, Appellant, and AMOS HARRIS et al., Respondents.

Argued April 1, 2009; decided May 12, 2009

### POINTS OF COUNSEL

*Altman Schochet LLP,* New York City (*Zalman Schochet* and *Michael A. Valentine* of counsel), for appellant. I. The Appellate Division's decision must be reversed because CPLR 5014 mandates nunc pro tunc treatment of renewal judgment liens. (*Brookhaven Mem. Hosp. v Hoppe,* 65 Misc 2d 1000; *Matter of Grand Jury Subpoena Duces Tecum Served on Museum of Modern Art,* 93 NY2d 729.) II. The Appellate Division's reliance on *Mansfield State Bank v Cohn* (58 NY2d 179 [1983]) is misplaced because this case is readily distinguishable. III. The Appellate Division penalized Morris Gletzer for strictly adhering to CPLR 5014. (*Mansfield State Bank v Cohn,* 58 NY2d 179.)

*Tannenbaum Helpern Syracuse & Hirschtritt LLP,* New York City (*David A. Pellegrino* and *David J. Kanfer* of counsel), for Amos Harris, respondent. I. The amendment to CPLR 5014 does not provide renewal judgments with retroactive effect. (*Brookhaven Mem. Hosp. v Hoppe,* 65 Misc 2d 1000; *Pangburn v Klug,* 244 AD2d 394; *First Natl. Bank of Long Is. v Brooks,* 1 Misc 3d 905[A], 2003 NY Slip Op 51509[U]; *Quarant v Ferrara,* 111 Misc 2d 1042; *Matis v DeLasho,* 191 Misc 2d 338.) II. Morris Gletzer's renewal judgment is not entitled to nunc pro tunc treatment. (*Mohrmann v Kob,* 291 NY 181; *Mansfield State Bank v Cohn,* 58 NY2d 179.) III. The equities favor the denial of nunc pro tunc relief in this situation.

*Hofheimer Gartlir & Gross, LLP,* New York City (*David L. Birch* of counsel), for Greenpoint Mortgage Funding, Inc. and another, respondents. I. Morris Gletzer was not entitled to a renewal judgment nunc pro tunc to eradicate a lien gap in excess of three years. (*Department of Hous. Preserv. & Dev. of City of N.Y. v Ferranti,* 212 AD2d 438; *Gratton v Dido Realty Co.,* 139 Misc 2d 724; *Quarant v Ferrara,* 111 Misc 2d 1042; *Brookhaven Mem. Hosp. v Hoppe,* 65 Misc 2d 1000; *Matter of Grand Jury Subpoena Duces Tecum Served on Museum of Modern Art,* 93 NY2d 729; *First Natl. Bank of Long Is. v Brooks,* 1 Misc 3d 905[A], 2003 NY Slip Op 51509[U]; *Matter of Metropolitan Life Ins. Co. v State Tax Commn.,* 80 AD2d 675, 55 NY2d 758; *Matis v DeLasho,* 191 Misc 2d 338; *Matter of Guardian Life Ins. Co. of Am. v Chapman,* 302 NY 226; *Khela v Neiger,* 85 NY2d 333.) II. Morris Gletzer is responsible for the lien hiatus from October 23, 2001 until March 1, 2005. (*Matter of Howard Hotel Corp. [Dalton-Friedman],* 150 Misc 782; *Baccari v De Santi,* 70 AD2d 198; *Grygorewicz v Domestic & Foreign Discount Corp.,* 179 Misc 1017; *United States v Ruby Luggage Corp.,* 142 F Supp 701; *L. Smirlock Realty Corp. v Title Guar. Co.,* 52 NY2d 179; *Mansfield State Bank v Cohn,* 58 NY2d 179.)

*Herrick, Feinstein LLP,* New York City (*Arthur G. Jakoby* and *Patricia M. Graham* of counsel), for New York State Land Title Association, amicus curiae. I. The Appellate Division's decision properly protects the interests of innocent purchasers who rely upon the public record of real estate encumbrances. (*Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13.) II. CPLR 5014 does not and was never intended to give a renewal judgment priority over a mortgage duly recorded before entry of a renewal judgment and after the expiration of the 10-year lien of the initial judgment. (*Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13; *Witter v Taggart,* 78 NY2d 234; *Suffolk County Fed. Sav. & Loan Assn. v Geiger,* 57 Misc 2d 184; *Matter of Metropolitan Life Ins. Co. v State Tax Commn.,* 80 AD2d 675, 55 NY2d 758; *Brookhaven Mem. Hosp. v Hoppe,* 65 Misc 2d 1000.) III. The Appellate Division correctly held that Morris Gletzer was not entitled to nunc pro tunc relief to give his renewal judgment priority over mortgages duly recorded in the gap period. (*Cornell v Cornell,* 7 NY2d 164; *Merrick v Merrick,* 266 NY 120; *Guarantee Trust & Safe Deposit Co. v Philadelphia, Reading & New England R.R. Co.,* 160 NY 1; *Mansfield State Bank v Cohn,* 58 NY2d 179.)

**OPINION OF THE COURT**

Ciparick, J.

In this appeal, we are asked to determine whether a renewal

lien secured pursuant to CPLR 5014 for a second 10-year period can take effect nunc pro tunc on the expiration date of the original lien, cutting off the property interests of intervening mortgagees. Because CPLR 5014 does not provide for a renewal judgment to have retroactive effect to the original lien's expiration date and because nunc pro tunc treatment is inappropriate where, as here, additional lenders relying on the public record acquired rights in the property, we hold that the renewal lien becomes effective when granted by Supreme Court.

## I

In 1991, plaintiff Gletzer obtained a default judgment in Supreme Court against defendant Harris for approximately $470,000 due on a note. On October 23, 1991, the judgment was docketed and acted as a lien on a Manhattan condominium owned by Harris. While a money judgment award is enforceable for 20 years (see CPLR 211 [b]), a real property lien resulting from the judgment is viable for just 10 years (see CPLR 5203 [a]). But a renewal action may be brought between the same parties to the original action during the tenth year to extend the lien for an additional 10-year period (see CPLR 5014).

Gletzer was unable to foreclose on the condominium and collect on the judgment and his efforts to collect from defendant through a court proceeding in Missouri failed. So, on October 22, 2001—one day before the 10-year lien was to expire—Gletzer initiated the underlying CPLR 5014 action to renew his lien. Harris moved to dismiss the action for lack of personal jurisdiction, relying primarily on his status as a Missouri resident during the decade preceding the action. In July 2004, a special referee concluded that Harris was a New York domiciliary and amenable to suit in New York.[1] In February 2005, Supreme Court confirmed the referee's report and granted Gletzer's motion for summary judgment, granting him a judgment lien nunc pro tunc to October 23, 2001, the day the original 10-year judgment lien had expired (2005 NY Slip Op 30317[U]).

After Gletzer's original lien had expired but before Supreme Court granted the renewal judgment—during the "lien gap" period—two mortgage companies loaned Harris money in return

---

1. In the Missouri proceeding, Gletzer sought to have the October 23, 1991 judgment enforced. Harris raised the jurisdictional issue of improper service of process in the original action.

for secured mortgages on the Manhattan condominium.[2] Greenpoint Mortgage Funding, Inc. loaned Harris $600,000, which mortgage was recorded in February 2003, and Copplestone Finance Company Limited loaned him $545,000, which mortgage was recorded in July 2003.

Subsequently, Greenpoint and Copplestone brought a separate action pursuant to CPLR 5239, seeking vacatur of the nunc pro tunc effect of the renewal judgment or, in the alternative, a determination of the superiority of their liens over Gletzer's lien. The mortgagees asserted that they had no knowledge of Gletzer's lien because a search of the public record revealed only the expired 10-year lien. Supreme Court dismissed their action (16 Misc 3d 1114[A], 2007 NY Slip Op 51416[U]). In holding that Gletzer's lien retained its superiority, the court reasoned that CPLR 5014 requires the timely commencement of a renewal action before the original lien expires to avoid a lien gap, as was done here (one day before the lien's expiration), and that any subsequent adjudication, although creating a lien gap (here for 3½ years), should not be counted against the original lienholder.

Consolidating appeals from the two related actions, the Appellate Division reversed Supreme Court's decision, as requested by the mortgage companies (51 AD3d 196 [1st Dept 2008]). The court concluded that Gletzer's renewal lien became effective the date that it was granted by Supreme Court, not when the original lien expired. Thus, the Appellate Division declared that the mortgagees' liens maintained priority over Gletzer's lien.

In interpreting the amended language of CPLR 5014, the Appellate Division concluded that the plain language of the statute does not eliminate all lien gaps. It was meant solely to provide a diligent creditor one year to reapply for an extension of the lien to avoid a gap (see 51 AD3d at 201-202). Additionally, the court held that setting the date of the renewal judgment nunc pro tunc to the expiration date of the original lien was an "improvident exercise of discretion" (id. at 205). Finally, the court held that Greenpoint and Copplestone were entitled to rely upon the absence of a recorded lien in the docket book (see id. at 205). We

---

2. In 2003, Harris's condominium was valued at approximately $1.15 million.

granted Gletzer leave to appeal (11 NY3d 702 [2008]), and now affirm.[3]

## II

Article 9 of the Real Property Law provides that a properly recorded mortgage is superior to subsequently recorded mortgages (see Real Property Law §§ 290-291). The statute was enacted to protect purchasers with an interest in real property without record notice of prior encumbrances and to create a public record to meet this end (see Andy Assoc. v Bankers Trust Co., 49 NY2d 13, 20 [1979]). Likewise, liens are similarly recorded (see CPLR 5203). For this reason, a "lien does not attach until the judgment is docketed in the county where the land lies," where it may be found "docketed in a book containing the names of the judgment debtor and judgment creditor," known as the docket book (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C9702:1). As Professor Siegel explains, "[o]nly a docketing of the judgment in the office of the county clerk will bring about the lien" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5203:2).

Because a lien on real property is only effective for 10 years and a money judgment is viable for 20 years (see CPLR 211 [b]; 5203 [a]), the Legislature enacted CPLR 5014 to allow a judgment creditor to apply for a renewal of the judgment lien (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5014:2). To avoid expiration of the judgment lien at the end of 10 years, the Legislature amended CPLR 5014, in 1986, to allow real property lienholders to seek timely renewal of the judgment lien during the last year of the pendency of the original lien (see id.). The amended language of the statute reads:

> "An action may be commenced under subdivision one of this section during the year prior to the expiration of ten years since the first docketing of the judgment. The judgment in such action shall be

---

**3.** Harris did not appeal from the portion of the Appellate Division order affirming Supreme Court's determination that it had acquired personal jurisdiction over him (see 51 AD3d at 199-200). Significantly, not before us now is the question of whether the basis of jurisdiction for the original lien would have been sufficient to confer jurisdiction in the new action (see Siegel, 2008 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C5014:2, 2009 Pocket Part, at 30-31).

designated a renewal judgment and shall be so docketed by the clerk. The lien of the renewal judgment shall take effect upon the expiration of ten years from the first docketing of the original judgment" (CPLR 5014).

Gletzer urges us to read the last sentence of this paragraph so as to automatically give retroactive effect to a renewal judgment—even when it was sought the day before the original lien expired and was not secured until more than three years later. Gletzer posits that the amended language in the statute was meant to guarantee an original lienholder's superior interest in the property over any intervening creditor by eliminating all lien gaps, no matter how long—even though the docket book does not reflect any viable lien during such gap.

We first turn to the express language of CPLR 5014. In clear terms, the statute provides a means for a lienholder, whose 10-year real property lien is within its final year, to bring a renewal action during the last year of the lien. Nowhere does the statute expressly mandate nunc pro tunc treatment of a renewal lien where the order is granted after the original lien has expired.

Gletzer contends that CPLR 5014's language, "shall take effect upon the expiration of ten years from the first docketing of the original judgment," requires Supreme Court to expunge all lien gaps when a lienholder has filed a renewal application anytime within the last year of the lien—albeit one day before the expiration of the original lien. The language of the statute, however, speaks otherwise. It is prospective in tone ("shall take effect upon"), not retrospective. The Legislature could have used the words "shall take effect as of," but did not. It allows a renewal lien, obtained before the original lien terminates, to become effective once the original lien expires, so as not to shorten the original lien period. As Professor Siegel so aptly states:

> "It allows the renewal suit during the last year of the 10-year lien period. And it provides for yet an additional security for the judgment creditor. *As long as the new judgment is rendered within the 10-year lien period,* the lien that the new judgment carries takes effect not immediately, but only upon the expiration of the first 10-year lien period" (Siegel,

Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5014:2 [emphasis added]).[4]

Similarly, other commentators have noted:

"[T]his provision enables the judgment creditor to sue on the old judgment and thereby acquire a new judgment and a fresh 10 year lien . . . *As long as the new judgment is rendered within the 10 year lien period*, the lien that the new judgment carries takes effect not immediately, but only upon expiration of the first 10 year lien period, avoiding a lien gap and at the same time giving the judgment creditor a full 10 years of new lien" (10 Carmody-Wait 2d § 67:4 [2009] [emphasis added]; *see also* Weinstein-Korn-Miller, NY Civ Prac ¶ 5014.04 [2d ed]).

Finally, had the Legislature intended retroactivity as a means to avoid all lien gaps, then allowing for a one-year application period would have been superfluous. Any lien gap created after the expiration of the original lien would be nullified as long as the renewal action was commenced before the expiration of the original lien. That the Legislature expressly provided for a one-year period is telling that it did not intend the relief that Gletzer now seeks.

As to legislative intent, we note that a statute should be construed in light of the problem to be cured and the event that prompted its enactment (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 95). The 1986 amendment to the statute was meant to remedy the "*Brookhaven* problem" (*see Brookhaven Mem. Hosp. v Hoppe*, 65 Misc 2d 1000, 1001-1002 [Suffolk Dist Ct 1971] [attempt by judgment creditor to revive a lien failed because it was brought before the 10 years had elapsed since the docketing of the judgment]), not to eradicate all lien gaps. As the sponsor's memorandum to the 1986 amendment makes plain: "This bill would allow the holder of the lien to make application for a renewal lien prior to the expiration date of the lien, which is now ruled out by decisions handed down by the Courts. (Brookhaven Memorial Hospital vs. Hoppe, 65 Misc.2d 1000.)" (Bill Jacket, L 1986, ch 123, at 8.)

---

4. This commentator's understanding of the amendment is particularly influential in this context because he is credited as having suggested the 1986 amendment to the statute (New York State Bar Association Committee on Civil Practice Law and Rules, Legislation Report, Bill Jacket, L 1986, ch 123, at 15).

Nunc pro tunc treatment or retroactive effect of the renewal judgment was not contemplated by the Legislature. Instead, both the plain text of the statute and the Bill Jacket materials make clear that the purpose of the amendment was to give a creditor seeking to eliminate the prospect of a lien gap one year to apply for a renewal lien—not the uncertain prospect of possibly obtaining one at some unspecified future time and having it relate back to the date of the expiring lien.[5]

We further note that nunc pro tunc treatment, in general, is reserved for "correct[ing] irregularities in the entry of judicial mandates or like procedural errors" (*Cornell v Cornell*, 7 NY2d 164, 167 [1959] [internal quotation marks omitted]). This inherent court power to correct clerical errors may not be wielded when third parties have substantive rights in play that may be altered by "record[ing] a fact as of a prior date when it did not then exist" (*Cornell*, 7 NY2d at 168, quoting *Mohrmann v Kob*, 291 NY 181, 186 [1943]).

In *Mansfield State Bank v Cohn* (58 NY2d 179 [1983]), under somewhat different circumstances, we restated the limits of nunc pro tunc treatment. There, a court retroactively set the date for the docketing of a lien where a foreign judgment from Texas was filed in New York, but later vacated on appeal in Texas, only to be reinstated by the Texas Supreme Court (*see id.* at 181-182). During the ensuing lien gap, a title company docketed a judgment on the property (*see id.* at 182). We said:

> "The denial of *nunc pro tunc* relief was mandatory. The relief sought by the bank was not to correct any irregularity, mistake, omission or other error; the bank sought the creation of a new lien retroactive to the date of its prior lien which, on its own motion, had been effectively nullified. The would-be invocation of a court's inherent power to correct error in a prior judgment is unavailing as a predicate for the creation of new substantive rights. The rights of the third party title insurance company had effectively intervened" (58 NY2d at 182-183).

The Legislature, in enacting its amendment to CPLR 5014, is presumed to be aware of the common law (*see* McKinney's Cons

---

5. It is interesting to note that Gletzer may not have been without a remedy after the expiration of the original 10-year lien. He could have filed an execution on his judgment pursuant to CPLR 5203 (b) or a notice of levy pursuant to CPLR 5235, as such measures would have provided notice to the world of his interest in the property.

Laws of NY, Book 1, Statutes § 301 [a]). Without having expressly stated otherwise, we cannot presume that the Legislature intended to abrogate the traditionally limited function of nunc pro tunc treatment, especially where the rights of third parties are at stake.

We thus conclude that those seeking to secure any interest in real property must be able to rely upon a public record to furnish full and complete information of any conveyances, liens or encumbrances affecting such property. They should not be penalized for failing to unearth an expired lien or not investigating the prospect that it might be subject to a pending renewal request. Additionally, nunc pro tunc treatment under these circumstances would be inimical to our State's commitment to record notice based upon the certainty of a docketing system that alerts potential purchasers and lienholders to encumbrances upon real property.

Finally, we emphasize that CPLR 5014 affords a judgment creditor a full year to renew his or her lien without suffering a lien gap. Where a judgment creditor diligently files at the beginning of this period and alerts the court to the applicable time constraint, a lien renewal application should be resolvable before the original lien expires. Thus, the Appellate Division was correct in vacating the nunc pro tunc entry of the renewal judgment and declaring that Greenpoint's and Copplestone's liens have priority over Gletzer's lien.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order, insofar as appealed from, affirmed, with costs.