■ In the Matter of KENNETH RANFTLE, Also Known as HOWARD KENNETH RANTFLE, JR., Deceased. RONALD J. RANFTLE, Appellant; J. CRAIG LEIBY, Respondent. [969 NYS2d 48]—

Order, Surrogate's Court, New York County (Kristin Booth Glen, S.), entered on or about September 14, 2011, which dismissed the petition for, inter alia, leave to submit objections to the probate of the will, affirmed.

Before us is the second proceeding challenging the ongoing probate of the last will of decedent H. Kenneth Ranftle. In December 2008, the Surrogate issued a decree granting probate upon the petition of respondent J. Craig Leiby, who is Ranftle's surviving husband and the appointed executor of the will (*Matter of Ranftle*, NYLJ, Feb. 3, 2009 at 27, col 1 [Sur Ct, NY County 2009]).

In June 2009, one of Ranftle's brothers petitioned for vacatur of the probate decree, arguing that recognizing Ranftle's and Craig's same-sex marriage in Canada would violate New York's public policy. The Surrogate denied the petition, finding the public policy argument to be "patently without merit," and we unanimously affirmed that decision (*Matter of Ranftle*, 81 AD3d 566, 567 [1st Dept 2011]).

In December 2009, another of Ranftle's brothers filed the petition now before us, claiming that the Surrogate's Court lacks jurisdiction over the estate's personal property because Ranftle was domiciled in Florida when he died. In opposition, Leiby contends that, at least six months before his death, Ranftle changed his domicile from Florida to New York.

The Surrogate's Court directed a hearing to determine the question of domicile, after which the Surrogate, in a September 2011 post-hearing decision, found that Leiby had proved by clear and convincing evidence that Ranftle had abandoned his Florida domicile and reestablished domicile in New York. For the reasons set forth below, we affirm.

The following facts were either uncontroverted or were adduced at the April 2011 hearing: Ranftle was born in 1943 in New York City and lived there for most of his life. In 1990, Ranftle and Leiby began living together as domestic partners and remained a committed couple until Ranftle's death. Throughout their relationship, Leiby was domiciled in New York. In 2003, however, Ranftle, who owned a house in Fort Lauderdale, Florida, changed his domicile to Florida because of certain tax benefits. To qualify as a Florida resident for tax purposes, Ranftle kept diaries to show he spent 183 days, or more than one half a year, in the state for each year from 2003 through 2007.

From the time Ranftle established Florida domicile in 2003 until he moved back to New York in 2008, Ranftle regularly commuted from Florida to be with Leiby. During that period,

Ranftle retained his concert and theater subscriptions and made charitable contributions to New York City institutions. Ranftle's financial advisor and his doctors and other health care professionals were also based in New York City.

In March 2008, Ranftle was diagnosed in New York with stage IV adenocarcinoma of the lung and a metastatic tumor of the brain. He never returned to Florida after his diagnosis, but instead lived until his death with Leiby in their jointly-owned New York City condominium.

On May 14, 2008, New York State Governor David Paterson issued an executive directive requiring the State's agencies to recognize same-sex marriages that had been validly contracted in other jurisdictions.* Leiby testified that, when Ranftle learned about the executive directive on the same day that it was issued, he immediately proposed to Leiby, who immediately accepted.

On June 7, 2008, Ranftle and Leiby married in Montreal, Canada, where they owned an apartment. Canada had extended the legal rights of marriage to same-sex couples in 2005. In accordance with Canadian law, the couple executed a declaration of marriage in which both stated that their "domicile after the marriage" would be their New York City apartment.

After the marriage, Ranftle took further affirmative steps to establish residence in New York. These included applying for Social Security from his New York address when he turned 65 in July 2008, shipping his car from Florida to New York, and changing his address of record for his investment accounts and tax documents from that of the Florida house to that of Ranftle's and Leiby's New York apartment. In addition, Ranftle's accountant testified that he had retained her to prepare his tax returns, and when she informed him that he had to file as a New York resident, he assented, but died before any filing took place.

On August 12, 2008, Ranftle executed the will admitted for probate. Ranftle's attorney, who prepared his final will in August 2008, testified at the hearing about what the Surrogate in her September 2011 order described as a "discordant note in this narrative," namely, that the will recites Florida as Ranftle's domicile. The attorney stated that the recitation was the result of her own error. Ranftle had asked her to make specific changes from his prior will to, among other things, reflect the new legal

---

* In contrast to New York, Florida law prohibited at the time, and still prohibits, the recognition of same-sex marriages even if the marriage was valid in the jurisdiction where it was performed (*see* Fla Stat Ann § 741.212).

status of his relationship with Leiby. Instead of drafting the new will from scratch, the attorney testified, she produced it by revising the word processing file for Ranftle's prior will, executed while he was a Florida domiciliary. The error had passed unnoticed because both the attorney and Ranftle focused their attention on the dispositional changes Ranftle wanted.

On November 1, 2008, Ranftle died suddenly from a heart attack. His diaries indicate that in 2008 he spent only 13 days in Florida, all before his cancer diagnosis, and that apart from brief visits to Montreal and California, he spent the rest of the year in New York.

In support of his claim that Ranftle did not change his domicile before his death, petitioner relied on the recitation in the final will, Ranftle's failure to change his driver's license, car registration, and Florida homestead declaration, and his vote in Florida by absentee ballot in the November 2008 presidential election.

In her post-hearing decision, the Surrogate found that Leiby had proved by clear and convincing evidence that in 2008, "probably at or around the time of his terminal diagnosis, but no later than his marriage," Ranftle changed his domicile to New York. The Surrogate credited Leiby's testimony and found that it "[told] a compelling and convincing story that answers and/or overcomes [petitioner's] arguments." Ranftle changed his domicile, the Surrogate found, for two reasons: (1) "to be with those he loved, in the city where he had lived and prospered, in the commodious apartment he and his husband owned together" as he faced his mortality; and (2) because New York, unlike Florida, recognized his marriage to Leiby.

Finding the testimony of Ranftle's attorney "highly credible," the Surrogate held that the last will recited a Florida domicile because of a scrivener's error that Ranftle failed to notice when he signed the document. The Surrogate held that Ranftle's vote in Florida by absentee ballot was "an anomaly insufficient to overcome the otherwise compelling evidence that [Ranftle] chose to become, became, and died a domiciliary of New York." She discounted other factors as mere passive acts of omission. Those passive acts included Rantfle's failure to amend a quitclaim deed and other documents showing a Florida domicile, all of which Rantfle had executed before he proposed to and married Leiby. Accordingly, the Surrogate dismissed the petition.

We see no basis for disturbing the Surrogate's Court's finding that Ranftle changed his domicile to New York in the months before his death. The Surrogate's Court Procedure Act defines domicile as "[a] fixed, permanent and principal home to which a

person wherever temporarily located always intends to return" (SCPA 103 [15]). "The determination of an individual's domicile is ordinarily based on conduct manifesting an intent to establish a permanent home with permanent associations in a given location" (*Matter of Clute v Chu*, 106 AD2d 841, 843 [3d Dept 1984]). A person's domicile is generally a mixed question of fact and law, which the court must determine after reviewing the pertinent evidence (*see Matter of Brunner*, 41 NY2d 917, 918 [1977]). No single factor is dispositive (*Matter of Kartiganer v Koenig*, 194 AD2d 879, 881 [3d Dept 1993]), and the unique facts and circumstances of each case must be considered (*Ruderman v Ruderman*, 193 Misc 85, 87 [Sup Ct, NY County 1948], *affd* 275 App Div 834 [1st Dept 1949]). A party alleging a change of domicile has the burden of proving that change by clear and convincing evidence (*Gletzer v Harris*, 51 AD3d 196, 199 [1st Dept 2008], *affd* 12 NY3d 468 [2009]).

We agree with the Surrogate that Leiby met his burden of proof as to the change of domicile. As noted, petitioner's scattered evidence that Ranftle remained a Florida domiciliary is overwhelmed by the large and consistent body of evidence showing that Ranftle moved back into the New York City apartment he shared with his husband with the intent of permanently remaining there, and that his change of domicile was motivated both by his grave illness and New York's recognition of same-sex marriages.

As a final matter, petitioner's contention that SCPA 1403 (1) (c) or (d) required that he be served with a citation is meritless. By their terms, both sections are inapplicable because no other will was filed or offered for probate (*see Matter of Dobbs*, 23 Misc 3d 1105[A], 2009 NY Slip Op 50589[U] [Sur Ct, Bronx County 2009]; *Matter of Dubelier*, 138 Misc 2d 180, 181 [Sur Ct, NY County 1987]). Concur—Saxe, Renwick and Freedman, JJ.

Sweeny, J.P., dissents in a memorandum as follows: Respondent failed to show by clear and convincing evidence that the decedent not only physically resided in New York at the time of his death, but also intended to change his domicile to New York (*see Matter of Kartiganer v Koenig*, 194 AD2d 879, 880-881 [3d Dept 1993]; *Matter of Shapiro*, 36 Misc 2d 271, 273 [Sur Ct, Westchester County 1962], *affd* 18 AD2d 837 [2d Dept 1963]). I must therefore dissent.

It is undisputed that decedent changed his domicile from New York to Florida in 2003. From 2003 to 2007, he kept meticulous records to show that he resided in Florida at least the required minimum of 183 days per year in order to maintain proof of his domicile in that state. In an attempt to demonstrate decedent's

intent to change his domicile to New York, the majority points to the fact that decedent "regularly commuted" to New York, "retained his concert and theater subscriptions and made charitable contributions to New York City institutions." He also utilized health care professionals in New York City. Decedent used his New York address when he applied for Social Security, had his address changed from Florida to New York for his investment accounts and listed his New York address on his Canadian marriage certificate. He also had one of his vehicles shipped from Florida to New York.

None of this is surprising in view of the fact that, on his last trip to New York in 2008, decedent was diagnosed with stage IV adenocarcinoma of the lung and a metastatic tumor of the brain. He was being treated for this condition at Sloan Kettering, one of the premier cancer treatment centers in the world. In fact, the record reveals that his oncologist and radiologist were literally "blocks" from the apartment he owned with respondent.

This evidence of intent to change domicile, however, is largely ambiguous. It would, of course, make sense for decedent to have his checks and mail sent to the address where he would be residing and receiving medical treatment for an extended period of time. However, this change of residence does not conclusively demonstrate an intent to change domicile (*see Kartiganer*, 194 AD2d at 880-881; *Shapiro*, 36 Misc 2d at 273). Moreover, while the decedent's Canadian marriage documents reflect the New York residence, other documents show the decedent's residence as Florida and New York, but specifically reference his "domicile," as opposed to residence, as Florida. Indeed, the decedent continued to vote in Florida, even doing so while living in New York by absentee ballot a week prior to his death. Additionally, he continued to maintain a house in Florida, and never changed either his Florida driver's license or the Florida registration of his vehicles. Given decedent's meticulousness in preparing and maintaining records to prove and maintain his Florida domicile, his failure to take obvious actions that would demonstrate an unequivocal intention to change that domicile to New York are clearly inconsistent with any fixed intention to abandon Florida as his domicile.

Decedent's longtime attorney, who drafted the will at issue testified that the Florida domicile as set forth in that will was merely a "scrivener's error," since she had used a prior computer-generated will to make various changes desired by decedent. Attorney statements, while not proof of domiciliary intent in and of themselves, can be considered when supported by decedent's actions; contrariwise, they may be disregarded

when they conflict with such actions (*see* 2 Warren's Heaton, Surrogate's Court Practice § 32.11 [3] [d] at 32-70 [7th ed 2009]).

In this case, both decedent's and his attorney's actions clearly conflict with her statement. Decedent's estate planning documents (health care proxy, living will, durable power of attorney, last will and testament) all specifically declared Florida as his "domicile," while simultaneously declaring that he "resided from time to time" in New York. Significantly, all those documents, as well as the quitclaim deed transferring Florida real property to his revocable trust were prepared and notarized by the same attorney who now inexplicably claims the Florida domicile in his will was a "scrivener's error." Further, the quitclaim deed was prepared and signed in close temporal proximity to the will. Although decedent transferred the Florida property into a revocable trust for the benefit of respondent, decedent was the sole trustee of that trust. Notably, that revocable trust instrument also specifically declared decedent's domicile as Florida.

These actions do not support the claim that decedent intended to change his domicile. Moreover, the trust affidavit, filed with the court by *respondent* postmortem, also listed decedent as a Florida domiciliary.

Nor is there support in the record for the majority's contention that decedent assented to having his taxes filed in New York due to his new status as a New York domiciliary. This claim arises from an accountant's assertion that, based upon decedent's change of domicile, she would not be able to file taxes for him as a Florida domiciliary. It should be noted that the record does not reflect that decedent ever filed taxes as a New York domiciliary after 2003. In fact, the tax returns upon which respondent relies to prove decedent's intention to establish New York as his domicile were filed by respondent *after* decedent's death, in his capacity as executor of decedent's will. Curiously, this filing conflicts with respondent's postmortem filing of the trust affidavit, which, as noted above, lists Florida as decedent's domicile.

"A domicile once established is presumed to continue unless and until a new domicile is acquired" (*Matter of Shapiro*, 36 Misc 2d at 273). In order to change domicile, there must be an intention to change domicile coupled with actions consistent with such intent (*id.*). In determining whether a change in domicile has occurred, "[n]o single factor is controlling and the unique facts and circumstances of each case must be closely considered" (*Matter of Gadway*, 123 AD2d 83, 85 [3d Dept

1987]). Where the facts are conflicting, the presumption is strongly in favor of the former domicile as against the asserted one (*Matter of Ratkowsky v Browne*, 267 App Div 643, 646 [3d Dept 1944], *lv denied* 268 App Div 835 [3d Dept 1944]). "[T]he party seeking to establish a change in domicile must do so by clear and convincing evidence" (*Matter of Kartiganer*, 194 AD2d at 881). To meet this burden, the proponent of the new domicile "must establish the decedent's intention to effect a change of domicile from [his] acts, statements, and conduct" (*Matter of Urdang*, 194 AD2d 615, 615 [2d Dept 1993]).

Based on my review of the record as a whole, respondent's proof is equivocal at best. It is therefore woefully short of the "clear and convincing" standard required in order to prove a change of domicile.